2023 IL App (1st) 231833-U

No. 1-23-1833B

SIXTH DIVISION
December 18, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23300298301 |
| | ) | |
| MAJID RIAZ, | ) | Honorable |
| | ) | Ellen Beth Mandeltort, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Justice Hyman concurred in the judgment.
Presiding Justice Oden Johnson dissented.

**ORDER**

¶ 1    Held: The circuit court erred when it denied defendant pretrial release by finding that he posed a real and present threat to a person or the community and that no less restrictive conditions would avoid the threat to any person or the community.

¶ 2    Defendant-appellant Majid Riaz, through his attorney, brings this appeal under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023) challenging the circuit court's order entered on

October 5, 2023, pursuant to, what is commonly known as, the Pretrial Fairness Act.[1] The circuit court's order denied pretrial release after Riaz was charged with criminal sexual abuse, a Class 4 felony. For the following reasons, we reverse and remand.

¶ 2                                     BACKGROUND

¶ 3     On October 5, 2023, Riaz appeared in court on charges of criminal sexual abuse (720 ILCS 5/11-1.5(a)(2) (West 2020)). The circuit court made a finding of probable cause. On the same day, the State filed a petition for pretrial detention.

¶ 4     At the hearing on the petition, the State proffered the following facts. At the time of the offense, the victim was 18 years old, and Riaz was 35 years old. The victim was a frequent customer at Riaz's smoke shop located in Chicago. Riaz and the victim were friends, and they had discussed the possibility of the victim working for Riaz at his business prior to this incident. On December 8, 2021, the victim sent Riaz a message asking if Riaz could pick her up because she did not get along with her father and wanted to leave. Riaz went to the victim's house and picked her up. The victim told Riaz that she needed somewhere to stay until Friday, when she planned to fly to Arizona to stay with her mother and sister. Riaz then suggested that the victim stay at his house in a suburb of Chicago, to which the victim agreed. Riaz's wife was not home.

¶ 5     When they arrived at Riaz's house, Riaz showed the victim the basement where she would be staying. Later in the night, the victim became hungry and asked Riaz if he could take her to McDonald's. Riaz drove her to McDonald's and on the way the victim saw Riaz's phone and

---

[1]  In 2021, the General Assembly passed two separate acts that "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 (discussing Pub. Act 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023) (amending 725 ILCS 5/art. 110) (the Pretrial Fairness Act) and Pub. Act 102-1104 (eff. Jan. 1, 2023) (the Follow-Up Act)).

observed a picture of her vagina. The victim was able to make this determination because the photo included scarring that the victim had since 2018.

¶ 6    After returning from McDonald's the victim fell asleep about midnight. At some point in the night the victim was partially awakened, felt cold, and felt her pants being pulled down, but she fell back asleep. Later, the victim was partially awakened by the feeling of her pants being pulled up. The victim then heard a sink turn on and shortly afterwards, she heard footsteps going up the stairs in the basement. The victim then became fully awake and felt a wet, burning, stinging feeling on her vaginal area, bottom and lower body.

¶ 7    The victim was afraid she had been sexually assaulted. She locked herself in the bathroom and called 911. The victim also called her boyfriend. At this time the victim was not wearing any underwear, just her gray checkered sweatpants. When the victim fell asleep, no one else was inside the residence other than Riaz.

¶ 8    Officers of the Mt. Prospect Police Department arrived on scene and made contact with the victim in Riaz's basement. On December 9, 2021, the victim was transported to Northwest Community Hospital where a sexual assault kit was administered. Forensic testing on anal swabs taken from the victim during the sexual assault examination revealed the presence of semen. On the same day, Riaz also provided a Mirandized statement where he denied making physical contact with the victim other than tapping her knee to get a blanket.

¶ 9    Pursuant to a search warrant, Riaz provided a buccal swab on January 19, 2022. On March 22, 2022, results from forensic testing of the semen sample revealed a major DNA profile that matched Riaz's DNA profile. The major profile would be expected to occur by chance in approximately one in 310 nonillion random, unrelated African Americans; one in 53.2 nonillion

random, unrelated Caucasians; and one in 6.33 nonillion random, unrelated Hispanics. Riaz was taken into custody on October 3, 2023.

¶ 10   The State informed the court that Riaz had no criminal background. The State also indicated that it would be seeking an order of no contact with the victim or any witnesses as a special condition of detention. The State argued that Riaz posed a threat to the safety of the victim and the community based on the facts of this case. Riaz was then served with a plenary civil no contact order that prohibited him from contacting the victim or coming within 500 feet of her and two other individuals.

¶ 11   Defense counsel responded that there are many aspects of the State's proffer that are "inherently incredible" and "don't make any sense." Counsel argued that "with regard to the issues of detention, [Riaz] is of course a one on both scales. He has no criminal history." Defense counsel also informed the court that Riaz is married, lives in a home that he owns with his wife and son, has owned a business in Chicago for many years and is a citizen of the United States. Defense counsel asked that Riaz be released without being detained because he "is no risk to the public and certainly no risk to flee."

¶ 12   The court granted the State's petition to detain Riaz. The court found that "in consideration of the factors in determining dangerousness as set forth in the statute, specifically 725 ILCS 5/110-6.1(g)," the State proved by clear and convincing evidence that "the proof is evident and the presumption is great that [Riaz] has committed an offense of criminal sexual abuse which is a detainable qualifying offense." The court further found that Riaz posed "a real and present threat to the safety of any person or the community based on the specific and articulable facts in the case, the fact that the victim was 18 years old at the time, considered [Riaz] to be a friend and was

sexually assault[ed] while in [Riaz's] home." The court further found that no condition or combination of conditions of pretrial release could mitigate the real and present threat, and no less restrictive conditions would avoid a real and present threat posed by Riaz. The court ordered Riaz detained pending trial.

¶ 13    Riaz filed a timely notice of appeal. In considering this appeal, we have reviewed the following documents that were submitted pursuant to Rule 604(h): Riaz's Notice of Pretrial Fairness Act Appeal, Riaz's supporting record, Riaz's supporting memorandum, and the State's memorandum in response.

¶ 14                                    ANALYSIS

¶ 15    On appeal, Riaz argues that the State did not prove that the proof was evident or the presumption great that he committed the offense; that the State did not prove by clear and convincing evidence that he poses a real and present threat to any person or the community; and that the State did not prove by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or his willful flight.

¶ 16    The State responds that, given the nature of this crime and the manner in which it was committed, the circuit court's conclusion that Riaz was a danger to the community was not arbitrary, fanciful, or unreasonable. Less restrictive alternatives such as home confinement or electronic monitoring would not mitigate the danger to the community because Riaz has demonstrated that he is not above committing sex offenses in his home. The State maintains that Riaz is opportunistic and, to ensure the safety of the public, Riaz cannot be given the opportunity to commit sexual offenses again.

¶ 17    Pretrial release is governed by Article 110 of the Code of Criminal Procedure of 1963

(Code) (725 ILCS 5/110-1 *et seq* (West 2022)). Pursuant to the Code, a defendant's pretrial release may be denied only in certain statutorily limited situations. Upon the State's filing of a petition requesting denial of pretrial release, the State has the burden of proving by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e) (West 2022). The "clear and convincing" standard of proof requires more than a preponderance of the evidence but less than proof beyond a reasonable doubt. *People v. Clay*, 361 Ill. App. 3d 310, 322 (2005).

¶ 18    The Code provides a nonexclusive list of factors that the circuit court may consider when making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. 725 ILCS 5/110-6.1(g) (West 2022). In making this determination, the court may consider evidence or testimony as to factors that include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from

custody; and (9) any other factors including those listed in section 110-5 of the Code. 725 ILCS 5/110-6.1(g) (West 2022).

¶ 19    Upon finding that the defendant poses a threat to the safety of any person or the community, the defendant's likely willful flight to avoid prosecution, and/or the defendant's failure to abide by previously issued conditions of pretrial release, the circuit court must determine pretrial release conditions that will reasonably ensure the appearance of a defendant as required for the safety of any other person or the community and the likelihood of compliance with all the conditions of pretrial release. 725 ILCS 5/110-5(a) (West 2022). The court must consider 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the defendant; 3) the history and characteristics of the defendant; 4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and 5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2022).

¶ 20    In order to reverse a circuit court's finding denying pretrial release under the Code, the reviewing court must conclude that the circuit court's findings were against the manifest weight of the evidence. See *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (setting a similar standard of review for requirement of clear and convincing evidence by the State in juvenile proceedings). But see *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (noting split in authority on standard of review for appeals under the Code as amended by the Act). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "Under the manifest weight standard, we give deference to the circuit court as the

finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Deleon*, 227 Ill. 2d at 332.

¶ 21 Questions regarding whether the circuit court properly considered one or more of the aforementioned factors in determining dangerousness are reviewed for an abuse of discretion. See *People v. Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 15 (in considering circuit court's decision to deny bail, the reviewing court will not substitute its judgment for that of the circuit court merely because it would have balanced the appropriate factors differently). An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position adopted by the court. *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 22 Based on our review of the record and the parties' memoranda, we agree with the State that the circuit court's findings on the first element were not against the manifest weight of the evidence. The State proved by clear and convincing evidence that the proof is evident and presumption great that Riaz committed the offense of criminal sexual abuse, a detainable offense under the Code. 725 ILCS 5/110-6.1(a)(1) (West 2022); 725 ILCS 5/110-6.1(e)(1) (West 2022). The State's proffer established that Riaz and the victim were the only persons in the home at the time of the offense, Riaz's buccal swab matched the semen taken from the victim, and neither Riaz nor the victim admitted to consensual sex.

¶ 23 However, as to whether Riaz posed a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, we agree with Riaz that the State failed to meet its burden of proof on this element and the circuit court erred in its determination that Riaz posed a threat to a person or the community. 725 ILCS 5/110-6.1(e)(2)

(West 2022).

¶ 24    Riaz has no criminal history. It was alleged that the sexual abuse in this case took place on December 8, 2021. Riaz was not taken into custody until October 3, 2023, and he first appeared in court on October 5, 2023, almost two years after the incident. A forensic testing report of the semen sample issued on March 22, 2022, revealed a major DNA profile that matched Riaz's DNA profile, but Riaz was not taken into custody until 18 months later.  There were no allegations that Riaz engaged in any criminal or otherwise inappropriate conduct during that period. Pretrial Services prepared and filed its public safety assessments for Riaz, scoring him one out of six for new criminal activity and one out of six for failure to appear, thus indicating that he was a low risk for both. In addition, Pretrial Services did not recommend any conditions if Riaz was released. Furthermore, although the record does not indicate where the victim currently resides, she stated she was going to Arizona to live with her mother and sister in 2021, while Riaz continues to reside in a home in a suburb of Chicago. The record also indicates that Riaz is married, has a child, and owns a business in Chicago. Finally, a civil no contact order, barring Riaz from contacting the victim or coming within 500 feet of her, remains in effect until trial. Although the State correctly observes that the facts it proffered show that Riaz acted opportunistically, the opportunity for Riaz to commit a similar offense against another individual in his home or retail establishment is remote and speculative, unlike sexual abuse cases involving the clergy or scout troop leaders, who have regular access to minors and young adults. Based on the facts before the circuit court, it was unreasonable for it to find that Riaz posed a threat to the victim or other people or to the community.

¶ 25    We likewise find that the court erred when it found that the State proved that no condition

or combination of conditions contained within subsection 110-10(b) of the Code could mitigate the real and present threat to the safety of any person or the community. 725 ILCS 5/110-6.1(e)(3) (West 2022). Subsection 110-10(a) establishes a number of mandatory conditions that must be imposed for defendants released prior to trial. 725 ILCS 5/110-10(a) (West 2022). Subsection 110-10(b) then provides a number of discretionary conditions that the circuit court may impose which include but are not limited to: (1) restrictions on leaving Illinois without leave of court; (2) prohibitions on possessing firearms or other dangerous weapons; and (3) prohibitions on communicating with particular persons or classes of persons. 725 ILCS 5/110-10(b) (West 2022). Subsection 110-10(b) also authorizes the circuit court to impose "such other reasonable conditions" if those conditions are individualized and the least restrictive means possible to ensure defendant's appearance in court and compliance with pretrial release rules, court procedures, and criminal statutes. 725 ILCS 5/110-10(b)(9) (West 2022).

¶ 26　The State did not meet its burden of proof because it presented no evidence on this element. The State's proffer provided its version of the facts of the case, and the assertion that Riaz had no other criminal background. When the court asked the State about "special conditions[,]" the prosecutor responded that "the State would be seeking no contact with the victim or any witnesses" but at no point did the State reference or discuss the conditions outlined in subsection 110-10(b) of the Code or explain why the no contact order would not suffice to mitigate any threat posed by Riaz. For this reason, we conclude that the court's finding that the State satisfied its burden to show that no condition or combination of conditions of pretrial release could mitigate the real and present threat posed by Riaz was against the manifest weight of the evidence. Accordingly, we

reverse and remand for proceedings consistent with this order. We express no opinion on conditions of pretrial release, if any, that the court may impose on remand.

¶ 27 Reversed and remanded.

¶ 28 Presiding Justice Sharon Oden Johnson, dissenting:

¶ 29 I must respectfully dissent because I find that the trial court did not abuse its discretion when it denied pretrial release. To find an abuse of discretion, we must conclude that no reasonable person could take the view that the trial court did. *People v. Inman*, 2023 IL App (4th) 230864, ¶¶10-11. When applying this standard of review we cannot substitute our judgment for the judgment of the trier of fact on issues regarding the weight of the evidence. As the appellate court has previously explained:

> " Rule 604(h), as amended by the Act, provides a new procedure for these appeals. See Ill. S.Ct. R. 604(h) (eff. Sept. 18, 2023). But the Act neither mandates nor suggests a different standard of review. A defendant appealing under Rule 604(h) may claim the State failed to fulfill its burden by 'clear and convincing evidence.' See Ill. S.Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023). However, we are not reviewing the State's evidence anew. Instead, we are reviewing the circuit court's evaluation of that evidence for an abuse of discretion. "[W]e will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of the witnesses." *People v. Vega*, 2018 IL App 91st) 160619, ¶ 44. Under the Code, the circuit court was invested with the responsibility to consider the various factors listed in section 110-6.1(g) (real and present danger0, as well as those in section 110-6.1(a)(1)-(8) (feasibility of less restrictive conditions) before finding detention to be appropriate. '[I]n reviewing the circuit court's ruling for an abuse

of discretion, we will not substitute our judgment for that of the circuit court, "merely because we would have balanced the appropriate factors differently." ' [*People v*]. *Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 30    We all agree that the State proved by clear and convincing evidence that the proof is evident and presumption great that Riaz committed the offense of criminal sexual abuse, a detainable offense under the Code. 725 ILCS 5/110-6.1(a)(1) (West 2022); 725 ILCS 5/110-6.1(e)(1) (West 2022). The State's proffer established that the offense occurred in the home, that Riaz and the victim were the only persons in the home at the time of the offense, that Riaz's buccal swab matched the semen taken from the victim, and that Riaz does not claim that the sex was consensual.

¶ 31    I fail, however, to understand how the majority can reject the trial court's finding that no condition or combination of conditions can mitigate the real and present threat to the safety of other young women in the community from a sexual predator who allegedly befriended a young woman and abused her in his home. Here, the victim was a patron and friend, whom defendant admitted that he invited into his home while his wife was away. Where the alleged assault occurred in the home, it is difficult for this justice to imagine, as it likely was for the circuit court, an alternative that would minimize his ability to befriend other young patrons at his place of business and equally as difficult to minimize his having other potential victims in his home. Even with electronic monitoring, the court would have no way to monitor or control what happens in his private home or business. Defendant points out that the alleged victim no longer lives locally; however, the threat of danger extends beyond the particular victim and to the community at large.

¶ 32    My colleagues seem swayed by the lack of criminal history and the lack of other accusations in the intervening two-year time period between the offense and his arrest. However, we cannot relegate these cases to checking the boxes on a uniform assessment instrument.  The circuit court is in the best position to assign the appropriate weight to the evidence before it.  We should not be reweighing the evidence in order to substitute our own balancing. Lastly, I am sure that our experienced colleague in the circuit court was probably well aware of the time lags that exist, particularly in sexual abuse and sexual assault cases: between events and reporting, and reporting and charges.  So, I do not find the fact that we are not currently aware of other potential offenses, during these two years, persuasive.

¶ 33    For the foregoing reasons I must respectfully dissent.