2025 IL App (2d) 250216-U
No. 2-25-0216
Order filed August 19, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-2414 |
| RICARDO G. ORDONEZ, | ) ) ) | Honorable Julia A. Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court properly denied defendant's pretrial release because defendant posed a real and present threat to the public that could not be mitigated through conditions.

¶ 2    Defendant, Ricardo Ordonez, appeals the order of pretrial detention of the circuit court of Kane County, arguing that the court erred in finding clear and convincing evidence that his pretrial release posed a real and present threat to public safety that could not be mitigated through conditions. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     On November 7, 2024, the State charged defendant with: (1) being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2024)); (2) gunrunning (*id.* § 24-3A(a)); (3) possessing a firearm with an invalid FOID card (430 ILCS 65/2(a)(1) (West 2024)); and (4) unlawful possession of a weapon by a convicted felon (720 ILCS 5/24-1.1(a) (West 2024)). On April 17, 2025, the State filed its verified petition to deny defendant pretrial release, alleging that defendant's pretrial release would pose a real and present threat to the safety of any person or the community. That same day, a hearing commenced on the State's petition.

¶ 5     At the hearing, the State introduced a synopsis from the Elgin Police Department, describing how, from June 27, 2023, through July 27, 2023, Elgin officers had worked with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to conduct four different arms sales between defendant and a confidential informant. In all, defendant and several accomplices sold the informant three pistols and three rifles. One of the pistols had an "obliterated" serial number, and several of the firearms were loaded with ammunition. The synopsis described how, despite the gun sales, defendant had not been sought for arrest until November 6, 2024, however, "to preserve the identity and safety of the [confidential informant] as *** part of an ongoing large-scale investigation."

¶ 6     The State proffered defendant's extensive criminal history, which included convictions for domestic battery resulting in bodily harm, resisting or obstructing a police officer, burglary, unlawful possession of a controlled substance, criminal damage to property, aggravated DUI, and fleeing or eluding a police officer. Defendant was also on pretrial release for DUI, driving on a suspended license, domestic battery, and assault.

¶ 7     The State next argued that the proof was evident or the presumption great that defendant committed detainable offenses, mainly by elucidating upon the synopsis in conjunction with defendant's criminal history. By way of dangerousness, the State argued that several factors listed

under section 110-6.1(g) of what is commonly known as the Pretrial Fairness Act (Act) (725 ILCS 5/110-6.1(g) (West 2024)) applied, in that defendant's offenses involved firearms (*id.* § 110-6.1(g)(1)), defendant had a criminal history indicative of "violent, abusive, or assaultive behavior" (*id.* § 110-6.1(g)(2)), the community was put at risk through the various arm sales (*id.* § 110-6.1(g)(3)), and defendant had possession or access to numerous firearms (*id.* § 110-6.1(g)(7)).

¶ 8 Concerning whether any conditions could mitigate the threat of defendant's pretrial release, the State argued that defendant's criminal history showed that previous court orders imposed against him did nothing to curb his criminal behavior, as he had previously violated the terms of his probation and conditional discharge while obtaining new charges. Furthermore, after the controlled weapon purchases, "defendant [had] been on warrant status for quite some time on *** other cases." Thus, the State reasoned, "to tell him to abide by all court orders and to come to court is not sufficient." The State further postulated that electronic home monitoring would not curb defendant's criminal behavior either, as defendant could remotely facilitate arms purchases with his accomplices from his own home.

¶ 9 The defense argued against detention, contending that the State could not establish any real and present threat where the alleged gun sales had occurred many months prior to defendant being arrested. In addition, defendant argued that the State had not alleged that the purchased firearms had been linked to any sort of criminal activity, and that the sales did not include any type of violence. Also, aside from his domestic battery conviction, defendant argued that his criminal history contained no violent offenses indicative of dangerousness.

¶ 10 Defendant also argued that any threat posed by his release could be mitigated through court-imposed conditions. For instance, the court could order defendant not to contact his accomplices, who defendant claimed were already incarcerated. Further, defendant countered the State's contention that home confinement would be futile where defendant was known to have

sold guns with accomplices, arguing that defendant had no history of selling guns remotely. To this point, defendant argued that there was no evidence that the arms sales remained ongoing.

¶ 11    Following arguments, the court granted the State's petition. In finding clear and convincing evidence that defendant's release posed a real and present threat, the court noted the lapse in time between the alleged offenses and defendant's arrest date. Nonetheless, the court reasoned, defendant's actions still posed a real and present threat to the community, as defendant had increased the number of firearms in his community. The court also noted that defendant's release would certainly pose a risk as to the confidential informant involved in the gun sales, as "that is a witness against [defendant] on each of these four deliveries of firearms." Finally, given defendant's "demonstrated inability to follow conditions of probation and conditions of conditional discharge in the past," the court agreed with the State that any conditions as to his prospective release would be useless.

¶ 12    Thereafter, the court entered an order denying defendant's release. While the handwriting in the order borders illegibility, it seems to suggest that, in addition to the reasons it stated during the hearing, the court had also agreed with the State's various arguments concerning defendant's danger to the community at large.

¶ 13    On April 28, 2025, defendant filed his motion for relief, disputing that the State had met its burden in proving by clear and convincing evidence that: (1) the proof was evident or presumption great that defendant committed detainable offenses; (2) defendant's release posed a real and present threat to any persons or the community; and (3) no conditions could mitigate such threat posed by defendant's prospective release. After a hearing on May 15, 2025, the court denied the motion for relief. Defendant timely appeals.

¶ 14                                                  II. ANALYSIS

¶ 15    On appeal, defendant argues that the court erred in finding that defendant's release posed a real and present threat and that such a prospective threat could not be mitigated through conditions. We address these arguments in turn.

¶ 16    The Act provides that pretrial release may be denied only in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). In filing a petition to deny a defendant pretrial release, the State bears the burden of proving, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant's pretrial release poses a real and present threat to any person or the community based on the specific facts of the case; and (3) no conditions would mitigate such a threat. 725 ILCS 5/110-6.1(a), (f) (West 2024).

¶ 17    Where a circuit court rules on a pretrial detention petition following a hearing where no live witnesses testified, we review the court's findings *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 21. Here, no live witnesses appeared at defendant's pretrial detention hearing, and we therefore review the circuit court's findings *de novo*. *Id.*

¶ 18    Defendant first argues that his release did not pose a threat to anyone or the community. We disagree. The Act includes a non-exhaustive list of factors to be used in determining dangerousness for the purposes of pretrial release, based upon "the specific articulable facts of the case." 725 ILCS 5/110-6.1(g).  These factors are:

   "(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

   (2) The history and characteristics of the defendant including:

   (A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. Such evidence may

include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

¶ 19 Here, many of these factors support detention. First, as argued by the State, the instant offenses certainly involve weapons. *Id.* § 110-6.1(g)(1). Furthermore, defendant's criminal history involved multiple forcible felonies, a conviction for domestic battery, and pending charges for domestic battery and assault. *Id.* § 110-6.1(g)(2). Given the fact that defendant had the resources

to sell six various guns in approximately a month, defendant—despite his arguments to the contrary—clearly had access to weapons. *Id.* § 110-6.1(g)(7). In addition to the statutory factors, certain specific facts of this case also support the circuit court's dangerousness determination. The fact that defendant sold at least one firearm with an obliterated serial number suggests that defendant understood the weapons would likely be used for unlawful purposes—as criminals commonly remove weapons' serial numbers to avoid tracing by law enforcement. Even more, many of the weapons that defendant sold were loaded for immediate use with their sales taking place in residential areas. Given these facts, we find that the trial court did not err in finding that defendant's pretrial release posed a threat to the community.

¶ 20    Nonetheless, citing *People v. Crawford*, 2024 IL App (3d) 230668, *People v. Finch*, 2023 IL App (2d) 230381-U, *People v. Riaz*, 2023 IL App (1st) 231833-U, *People v. Rocquemore*, 2024 IL App (3d) 240121-U, and *People v. Barajas*, 2025 IL App (2d) 25013-U, defendant argues that the 15 month time lapse between the controlled gun sales and defendant's arrest belie the circuit court's finding that he represented a real and present danger. We disagree.

¶ 21    Defendant disregards that, according to the record, law enforcement had a legitimate reason to delay defendant's arrest—namely, in order to preserve the confidential informant's identity and safety as part of a larger scale investigation. Thus, the delay was not the result of any belief that defendant posed no danger to the community, but rather, to avoid compromising the larger investigation.

¶ 22    Furthermore, all of the cases that defendant relies upon are distinguishable, and none stand for the proposition that a lapse of time, in and of itself, precludes a finding of dangerousness. For instance, in *Crawford*, which defendant most heavily relies upon, the defendant was charged with stalking. 2024 IL App (3d) 230668, ¶ 9. The State sought detention under section 110-6.1(a)(2) of the Act, which specifically pertains to the offense of stalking or aggravated stalking. *Id.* ¶ 1. In

reviewing whether the circuit court properly ordered defendant to be detained, the Third District noted that, under the Act, stalking offenses are subject to "a substantially different standard than other offenses." *Id*. Normally, "[w]hen a defendant is charged with any offense other than stalking or aggravating stalking, the State must prove 'the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community.' " *Id.* (citing 725 ILCS 5/110-5.1(a)(1), (1.5), (3)-(7)). On the other hand, as in *Crawford,* when the State seeks the pretrial detention of a defendant charged with stalking or aggravated stalking, the State must instead show clear and convincing evidence " 'that the defendant's pre-trial release poses a real and present threat to the safety of a victim of the alleged offense, and denial of release is necessary to prevent fulfillment of the threat upon which the charge is based.' " *Id.* (citing 725 ILCS 5/110-6.1(a)(2)).

¶ 23    Here, defendant was *not* charged with stalking, meaning the analyses here and in *Crawford* are completely different. *Id.* This is instrumental because, unlike in *Crawford*, the court here was able to consider the broader threat defendant posed to the community in making its dangerousness determination. Thus, *Crawford* is distinguishable.

¶ 24    In any event, *Crawford* does not stand for the bald assertion that the length of time spanning between a defendant's offense and arrest is determinative of dangerousness. There, in reversing the circuit court's detention order, the *Crawford* court found that, "[h]ad the State pursued charges against defendant earlier, the result may have been different." *Id*. ¶ 10. However, this finding was not based solely on the fact that a certain amount of time had lapsed since the alleged stalking had occurred. Rather, the *Crawford* court's conclusion was based on *what had occurred* during the lapsed time. In the months since the offense, the defendant had "moved far away from [the victim]," found a new partner, and even fathered a child. *Id.* Thus, circumstances had changed such that any realistic threat against the specific victim there had significantly diminished.

¶ 25    *Finch*, *Riaz*, *Rocquemore*, and *Barajas*, are all equally distinguishable. Unlike defendant, the defendants in all of those cases had no prior histories, no access to firearms, or other charges that had occurred since their arrests. *Finch*, 2023 IL App (2d) 230381-U, ¶ 19 (the elderly defendant with no criminal history fondled a 12-year-old neighbor on single occasion); *Riaz*, 2023 IL App (1st) 231833-U, ¶¶ 11, 25; *Rocquemore*, 2024 IL App (3d) 240121-U, ¶ 5; *Barajas*, 2025 IL App (2d) 250130-U, ¶ 25. Furthermore, defendant offers no language from any of these cases suggesting that a lapse of time spanning offenses and the defendants' arrests played any role in the courts' analyses. In any event, as we've stated above, any delay here was not because defendant did not pose a risk, but instead, because the State wished to preserve a larger investigation into arms sales. For these reasons, defendant's reliance upon these cases is misguided.

¶ 26    Defendant further argues that the circuit court's finding was flawed because the State offered no evidence that defendant "ever initiated a gun sale on his own." Further, defendant argues that there was no evidence that he had sold guns outside of the investigation. We reject both contentions. Contrary to defendant's suggestion, the court never seemed to be of the mistaken belief that defendant initiated the sales on his own. In fact, the record is replete with references to the confidential informant, defendant's accomplices, and codefendants. Furthermore, while there was no evidence that defendant had sold guns outside of the investigation, this is an obvious inference to be made, given the volume of guns that defendant had sold to just one individual in a single month's span.

¶ 27    Defendant also takes issue with the circuit court's consideration of defendant's criminal history, which it argues included "bald charges" of certain misdemeanor charges that were pending, such as his latest domestic battery. Defendant argues that, pursuant to *People v. Brand*, 2024 IL App (1st) 240493, the court was wrong to assume that defendant's pending misdemeanors were indicative of threat because their circumstances are unknown.

¶ 28   Defendant's reasoning is strained. In *Brand*, the State had characterized the defendant's prior reckless-discharge conviction as being "violent" while arguing for detention. *Id.* ¶ 35. There, the First District found nothing in the record, however, indicative of a violent criminal history, as the circumstances concerning the conviction remained unknown. *Id.* ¶ 37. Here, while the circumstances surrounding defendant's criminal history have not been fully fleshed out, it is indisputable that they include convictions and charges for domestic battery and assault. Unlike the reckless discharge conviction in *Brand*, these offenses are inherently harmful. Thus, the trial court did not err in considering these offenses in ascertaining the threat defendant's release posed to the public.

¶ 29   Defendant also takes issue with the circuit court's finding that defendant posed a risk to the confidential informant. Defendant categorizes this finding as "speculative." Even assuming *arguendo* that defendant's argument holds merit, it is ultimately immaterial, as the circuit court had also agreed with the State that defendant's release posed a threat to the community at large. Thus, grounds still existed for defendant's detention under the Act's dangerousness standard. 725 ILCS 5/110-6.1(a).

¶ 30   Finally, defendant alternatively argues that the circuit court erred in finding that the threat of his release could not be sufficiently mitigated through conditions. We wholly reject this contention. While defendant argues that home detention would definitively protect the public from defendant, his criminal history suggests otherwise. The instant gun sales occurred while defendant was prohibited from possessing firearms, due to his status as a felon. Several of the offenses included in defendant's criminal history had occurred while he was on probation. Thus, these facts demonstrate defendant's inability to adhere to the orders of the court, and the trial court did not err in finding that conditions would be insufficient to curb the threat of defendant's release. For all of these reasons, the trial court also did not err in ordering defendant's detention.

¶ 31                                        III. CONCLUSION

¶ 32    For all of these reasons, we affirm the judgment of the circuit court of Kane County.

¶ 33    Affirmed.