2025 IL App (2d) 240663-U
No. 2-24-0663
Order filed January 17, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No.   23-CF-2564 |
| | ) | |
| MALIK DAVIS, | ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering him detained.

¶ 2    Defendant, Malik Davis, appeals from orders of the circuit court of Kane County granting

the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of

Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Acts

101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to these

public acts collectively as the "Acts").[1] On appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that: (1) he poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case; and (2) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On November 28, 2023, defendant was charged by indictment with 8 counts of first-degree murder (720 ILCS 5/9-1(a)(1) (West 2020)) and 10 counts of aggravated battery (720 ILCS 5/12-3.05(b)(1), (b)(2) (West 2020)). The charges stemmed from the March 2021 death of defendant's four-month-old son, M.M.D. On the same date, defendant was also charged with an additional nine counts of aggravated battery (720 ILCS 5/12-3.05(b)(1), (b)(2) (West 2020)), which counts alleged that between November 2020 and January 2021, defendant shook his daughter, M.D. (M.M.D.'s twin sister), causing bone fractures, hemorrhages, and neurological symptoms. A warrant was issued for defendant's arrest, and he was taken into custody on January 3, 2024.

¶ 5      Also on January 3, 2024, the State filed a verified petition to deny defendant pretrial release. In its petition, the State alleged that defendant was charged with detention-eligible offenses and he posed a real and present threat to the safety of any person or persons or the community. The State attached to its petition a sworn synopsis drafted by the arresting agency in this case. A public safety assessment (Assessment) completed on January 4, 2024, scored defendant at a one

---

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

out of six on both the "new criminal activity scale" and the "failure to appear scale." The Assessment also flagged defendant's "new violent criminal activity" as a "no." The Assessment indicated that defendant had no prior misdemeanor or felony convictions and that he did not have any prior failures to appear pretrial. The Assessment recommended "max conditions" if defendant were released. After defense counsel requested multiple continuances, the court scheduled a hearing on the State's petition for March 15, 2024. In conjunction with these continuances, the trial court, relying on the State's petition, the synopsis drafted by the arresting agency, the charges against defendant, and the Assessment, made an independent finding that defendant's continued detention is necessary to protect specific individuals and the public. Further, the trial court ordered, as a condition of detention, that defendant not contact M.D. or M.D.'s mother.

¶ 6     At the March 15, 2024, hearing, the State initially submitted four exhibits: (1) a discharge report for M.D. dated February 9, 2021, from Advocate Children's Hospital; (2) a skeletal imaging survey of M.M.D. dated March 12, 2021; (3) a report of postmortem examination of M.M.D.; and (4) the sworn synopsis drafted by the arresting agency.[2] The State then proffered that M.M.D. and M.D. were born healthy twins in November 2020. Through February 2021, M.D. was twice admitted to the hospital and diagnosed with subdermal hematomas at different stages of healing, a fractured clavicle, and fractured ribs. On the morning of March 8, 2021, defendant called 911, saying that he had performed cardiopulmonary resuscitation on M.M.D. because he had gone limp. Defendant was allegedly calm when the police and the paramedics arrived, and he did not appear at the hospital until an hour after M.M.D.'s arrival. M.M.D. ultimately died from his injuries,

_____

[2] At the beginning of the detention hearing, defense counsel inquired about the existence of a "pretrial risk assessment." The Assistant State's Attorney responded that she had not seen one, and the court stated that it did not see one in the file. On appeal, defendant filed a motion to supplement the record with the Assessment, which motion we granted.

which included fractures to his legs as well as hemorrhages and edemas in his head and body. The postmortem skeletal survey demonstrated findings compatible with nonaccidental trauma.

¶ 7    The State further proffered that the police examined defendant's cell phone and discovered numerous Google searches. In December 2020, when neither child was in the hospital, defendant's phone was used to search "small bump on one-month-old head" (searched six times) and "head injury baby" (searched twice). On February 10, 2021, one day after M.D. was released from the hospital, there were 17 searches for "infant spiral fracture," though M.D. had not been diagnosed with that injury. In the following days, there were searches for "symptoms of being strangled" (searched seven times), "symptoms of being strangled infant" (searched three times), "choking treatments" (searched one time), "infant broken neck symptoms" (searched five times), "poisoned infant" (searched three times), "child abuse found years later" (searched six times), "side effects of air deprivation" (searched three times), "signs of poisoning" (searched three times), "infant broken neck" (searched five times), and "child abuse, no evidence" (searched three times). Five days before M.M.D. was hospitalized, there were searches for "child abuse, no death" (searched five times) and "child abuse Illinois" (searched five times). Shortly after M.M.D. was admitted to the hospital, there were searches for "child abuse 2021," "child abuse 2021 Illinois," "child abuse first offense," "arrested for child abuse," "SIDS [sudden infant death syndrome]," "infant dies do you get charged," "can you go to jail for accidentally killing your baby," "can you go to jail if child dies, no proof," "death of infant labeled as abuse no proof," and "SBS [shaken-baby syndrome] infant." The day after M.M.D. was admitted to the hospital, there were additional searches, including the phrases "if hospital says shaken baby syndrome, do you go to jail," "fastest way to commit suicide," "how long does it take you to go to jail after infant dies," and "how bad is jail really."

¶ 8     The State argued that although it was not aware of defendant having a criminal history, he posed a threat to his daughter, M.D., and any child with whom he would come into contact. The State noted that M.D. "has the opportunity to see her paternal grandfather" and defendant has suggested that he would live with his father if released. The State also posited that the facts showed defendant has a propensity for violence and abuse. The State asserted that conditions such as electronic monitoring would be insufficient to protect M.D. or other children because electronic monitoring would not indicate whether there were children in defendant's presence. The State observed that M.D. was doing well because it had been "three years after this happened" and defendant "hasn't been in [M.D.'s] life to abuse her repeatedly."

¶ 9     Defense counsel responded that M.M.D. and M.D. were not born healthy and the injuries could have been from problems during childbirth or other non-abusive means. He noted that the Illinois Department of Children and Family Services (DCFS) had been involved after M.D.'s initial hospitalization, but the safety plans were terminated because the allegations of abuse were "unfounded." Defense counsel did not dispute that the offenses with which defendant is charged are detainable, but contended that defendant did not pose a threat. Defense counsel emphasized that defendant, who was 23 years of age, had no criminal history, had no history of violence, has worked consistently from January 2016 through June 2023, and has siblings and parents in the area who are supportive. Defense counsel argued that there are less restrictive conditions than detention. Defense counsel posited that, if released, defendant could live in Illinois with his father, continue to work at his most recent job (a delivery driver), be ordered to have no contact with minors, and be monitored by GPS. Alternatively, defendant could reside with his mother in Missouri.

¶ 10    In reply, the State noted that defendant was "indicated" by DCFS after M.M.D. passed away. The State also maintained that electronic home monitoring is not the least restrictive means

in that it "does not tell us who he's with, what actions he is or is not doing *** [or] prevent him from harming another child in any way." The State insisted that the least restrictive means of protecting M.D. and the public at large is for defendant to remain incarcerated.

¶ 11   The court granted the State's petition to detain defendant and issued a written order summarizing its findings. The court found that the proof is evident and the presumption great that defendant committed a detainable offense. The court also found that defendant poses a real and present threat to the safety of any person or persons or the community. The court acknowledged defendant's history and characteristics, including "his complete lack of criminal history" and "his apparent nonviolent nature," but noted that it also had to look at the allegations in the case. The court observed that defendant is charged with "numerous non-probationable violent offenses against infants." The court pointed to the "profound injuries" to the two infants, one of whom died. The court noted that defendant did not make any statements, but found that the content of the Google searches showed "consciousness of guilt, that [defendant] knew he did something wrong." The court found that defendant "exhibited extreme violence to the minor children" and that "should there be contact" by defendant with M.D. or any other minor, the child "would be at risk in this defendant's presence." The court concluded that there are no conditions that can mitigate the real and present threat posed by defendant to M.D. or the public because GPS and electronic home monitoring "cannot guarantee any person's safety if the defendant chooses to commit future violent acts."[3]

---

[3] In its petition, the State also alleged that defendant was a flight risk. The court declined to grant the petition on this ground.

¶ 12    On August 27, 2024, defense counsel filed a "Motion to Review Court's Finding" of pretrial detention.[4] In the motion, defense counsel disputed the court's findings that defendant posed a real and present threat to the safety of any person or persons or the community and that no conditions could mitigate any alleged threat. The court held a hearing on the motion the day it was filed. At the hearing, defense counsel argued that defendant did not pose a threat and conditions such as home monitoring and an order that defendant stay away from minors could mitigate any risk. Defense counsel also noted that M.D. and her mother had moved to Texas. As such, GPS monitoring would mitigate any risk that defendant would have contact with M.D. The State responded that the court correctly found that defendant needed to be incarcerated.

¶ 13    The court denied defendant's motion. The court observed that there were two victims with numerous traumatic injuries and the acts were violent. The fact that M.D. and her mother had moved to Texas did not persuade the court that the surviving child was not at risk or that, should defendant be around other minors, "that they would not then also be at risk." Consequently, the trial court reaffirmed its earlier ruling that there are no less restrictive means than detention to protect the public and M.D. from the threat posed by defendant. At a subsequent hearing, defense counsel indicated that defendant wished to appeal, but was now indigent. The court appointed the Office of the State Appellate Defender (OSAD), and defendant filed a notice of appeal on October 9, 2023. See Ill. S. Ct. R. 604(h)(3) (eff. April 15, 2024) (providing that a party may initiate an appeal by filing a notice of appeal in the circuit court at any time prior to conviction). OSAD

---

[4] Although not titled a "Motion for Relief" (see Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024) (requiring, as a prerequisite to an appeal from a detention order, a written motion requesting the relief to be sought on appeal and the grounds for such relief)), the State did not object to the motion's title. Further, the parties and the court treated the filing as if it were a "Motion for Relief."

submitted a memorandum in support of defendant's appeal, and the State filed a responding memorandum.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, defendant contends that given his lack of criminal history and the unlikeliness that he would reoffend, the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety of any person or the community and that no conditions of release could mitigate any alleged threat.

¶ 16    Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). In Illinois, all persons charged with an offense are eligible for pretrial release irrespective of the seriousness or the nature of the offense. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022); *People v. Grayson*, 2024 IL App (4th) 241100-U, ¶ 7. To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2022)). The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 17    We apply a two-part standard of review to a trial court's decision to detain a defendant. We apply the manifest-weight-of-the-evidence standard to the trial court's factual determinations, including whether the proof is evident or the presumption great that a defendant has committed a qualifying offense, whether a defendant poses a threat or a high likelihood of willful flight, and whether any conditions would mitigate any threat or the risk of willful flight. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if a conclusion opposite to that of the trial court is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52.

¶ 18    Defendant first contends that the State did not prove by clear and convincing evidence that he posed a real and present threat to M.D. such that he should be incarcerated. In support of this contention, defendant notes that the allegations in this case stem from 2021, but he was not charged until late in 2023. In the interim, M.D. has been safe and healthy and now resides with her mother in Texas. Defendant further cites his lack of a criminal record and observes that no criminal allegations have been made against him following the dates of the allegations in this case through the date of his arrest. Defendant posits that the lengthy time without criminal activity is evidence that he is unlikely to reoffend. Defendant also maintains that he does not pose a real and present threat to the community in general because he does not regularly interact with children and "child abuse cases are not correlated with an increased risk to the public." Defendant asserts that the question before the court was whether he posed a "real and present" threat, not a speculative threat

based on a condition precedent that is unlikely to recur, *i.e.*, that he would have unsupervised interaction with a child.

¶ 19    In considering whether a defendant poses a real and present threat to the safety of any person or the community, the Code provides that the trial court may consider evidence or testimony concerning factors that include, but are not limited to (1) the nature and circumstances of any offense charged, including whether the offense was a crime of violence, involved a weapon, or was a sex offense; (2) the history and characteristics of the defendant, including the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior or lack of such behavior and the defendant's psychological history or lack of such history; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or other form of supervised release from custody; and (9) any other factors, including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)), deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g)(1)-(9) (West 2022).

¶ 20    The record in this case establishes that the trial court clearly assessed the statutory factors and found that they weighed in favor of a finding that defendant posed a real and present threat to M.D. and the public at large. In this regard, the court acknowledged defendant's "complete lack of criminal history" and "his apparent nonviolent nature." Nevertheless, the court noted that it had

to examine the allegations in this case. To that end, the court observed that defendant is charged with "numerous non-probationable violent offenses against infants." The court pointed to the "profound injuries" to the two infants, one of whom died. The court noted that while defendant did not make any statements, the Google searches discovered on his cell phone showed consciousness of guilt. The court found that defendant "exhibited extreme violence to the minor children" and that "should there be contact" by defendant with M.D. or any other minor, the child "would be at risk in this defendant's presence." The trial court's findings are amply supported by the evidence proffered by the State at the detention hearing. That evidence showed that M.D. was admitted to the hospital more than once with severe injuries including subdermal hematomas and fractured bones. M.D. was just a few months old at the time of these occurrences. About a month after M.D.'s most recent release from the hospital, defendant called 911, saying that he had performed cardiopulmonary resuscitation on M.M.D. because the infant had gone limp. M.M.D. ultimately died from his injuries, which included fractures to his legs as well as hemorrhages and edemas in his head and body. The postmortem skeletal survey demonstrated findings compatible with nonaccidental trauma. M.M.D. was just four months of age at the time of his death. As the trial court noted, the nature of the Google searches discovered on defendant's phone showed consciousness of guilt. Although DCFS terminated a safety plan put in place after M.D.'s initial hospitalization, defendant was "indicated" after M.M.D.'s death. Based on our review of the record, we cannot say that a finding contrary to that of the trial court is clearly apparent.

¶ 21   Nevertheless, defendant insists that he is unlikely to reoffend. In support, defendant emphasizes his lack of criminal history, the fact that no criminal allegations have been made against him following the dates of the allegations in this case and his arrest, and M.D.'s living arrangements. Defendant also insists that he does not pose a real and present threat to the

community in general because he does not regularly interact with children and "child abuse cases are not correlated with an increased risk to the public." Defendant asserts that this case has some similarities with *People v. Riaz*, 2023 IL App (1st) 231833-U, ¶ 25 (holding that the State failed to meet its burden of proving that the defendant, who was charged with criminal sexual abuse, posed a real and present threat to the safety of any person or the community where the record showed that the defendant had no criminal history, there were no allegations that he engaged in any criminal conduct during the two-year period between the incident with which he was charged and his arrest, a public safety assessment scored him as "low risk" for "new criminal activity" and "failure to appear," and the victim stated she was moving to Arizona) and *People v. Crawford*, 2024 IL App (3d) 230668, ¶ 10 (finding that the evidence presented by the State did not show that the defendant, who was charged with stalking, continued to be a threat to the victim where he did not violate an order of protection put in place after the alleged incidents and he moved far away from the victim). Defendant's reliance on *Riaz* and *Crawford* is misplaced as the Code requires that decisions regarding detention prior to trial be individualized and based on the specific, articulable facts of the case. 725 ILCS 5/110-6.1(f)(7), (g) (West 2022). Moreover, the trial court was clearly cognizant of defendant's lack of criminal history and the fact that M.D. moved to Texas. It determined, however, that these factors were outweighed by the fact that there were two victims of a very young age, the victims suffered numerous violent injuries, and there was evidence of defendant's consciousness of guilt. Again, based on our review of the record, we cannot say that the trial court's finding that defendant posed a real and present threat to M.D. and the community at large was against the manifest weight of the evidence.

¶ 22 Defendant also contends that, even if the State proved that he posed a threat, the State failed to establish by clear and convincing evidence that any alleged threat could not be mitigated by

pretrial conditions. Defendant suggests that GPS monitoring and an order requiring him not to have contact with minors would mitigate any perceived threat given that he resides in Illinois and M.D. lives in Texas. See *People v. Russell*, 2023 IL App (4th) 230918-U, ¶ 18 (holding that the trial court's decision to detain the defendant, who was charged in the drowning death of a two-year-old child under her supervision, constituted an abuse of discretion because any perceived threat could be mitigated by a condition of release, such as an order barring the defendant from providing childcare); *People v. McDonald*, 2024 IL App (1st) 232414, ¶ 40 (finding that the defendant, who was charged with murdering his three-month-old child, was not an unmitigable threat because there was "no indication [the] defendant will be exposed to or responsible for the care of other children in his day-to-day life"). According to defendant, the State's allegation that he poses an unmitigable threat to other children was based on the mere possibility that he could abuse a child, however remote. This, defendant asserts, was insufficient to satisfy the State's burden on this element.

¶ 23    In determining whether a specific threat can be mitigated through the imposition of conditions of pretrial release, the trial court considers: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat to the safety of any person or the community that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1)-(5) (West 2022). The history and characteristics of the defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record

concerning appearance at court proceedings" as well as "whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2022).

¶ 24 Here, the trial court found by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat posed by defendant. We cannot find that a conclusion opposite that of the trial court's is clearly apparent. The victims in this case were both infants, a particularly vulnerable subset of the community needing protection. The proffer made at the detention hearing suggests that the violent acts committed against the infants were not singular events. M.D. was admitted to the hospital on more than one occasion and was diagnosed with severe injuries, including subdermal hematomas and broken bones. M.M.D. was diagnosed with similar injuries when he was hospitalized. The postmortem skeletal survey demonstrated that M.M.D.'s injuries were compatible with nonaccidental trauma. Given the tender age of the victims, the numerous injuries sustained by the victims, and the violent nature of their injuries, the court concluded that the conditions for release suggested by defendant would not mitigate the real and present threat posed by defendant to M.D. or the public. The court expressly rejected GPS and electronic home monitoring because such tools "cannot guarantee any person's safety if the defendant chooses to commit future violent acts." Indeed, while GPS or electronic home monitoring would indicate defendant's location, it would not show if defendant was in the presence of a minor. Considering the foregoing, we cannot say that the trial court's finding that no condition or combination of conditions can mitigate the real and present threat to the physical safety of any person or persons or the community was against the manifest weight of the evidence.

¶ 25    In conclusion, given the record before us, we cannot say that the trial court's factual findings are against the manifest weight of the evidence. Moreover, based on the trial court's factual findings, we conclude that its order granting the petition to deny defendant pretrial release was not an abuse of discretion.

¶ 26                                      III. CONCLUSION

¶ 27    For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 28    Affirmed.