2025 IL App (2d) 250134-U
No. 2-25-0134
Order filed June 17, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.  25-CF-446 |
| | ) ) | Honorable |
| BRYCE D. JACOBS, | ) ) | Julio Cesar Valdez and John A. Barsanti, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering defendant detained.

¶ 2    Defendant, Bryce D. Jacobs, appeals from orders of the circuit court of Kane County granting the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to

these public acts collectively as the "Acts").[1] On appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that: (1) he poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case and (2) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. We affirm.

¶ 3                                I. STATEMENT OF FACTS

¶ 4                                    A. Background

¶ 5      On February 26, 2025, defendant was charged by complaint with: (1) two counts of aggravated criminal sexual assault (bodily harm) (720 ILCS 5/11-1.30(a)(2) (West 2024)), a class X felony; (2) one count of aggravated criminal sexual abuse (bodily harm) (720 ILCS 5/11-1.60(a)(2) (West 2024)), a class 2 felony; and (3) one count of aggravated domestic battery (strangle) (720 ILCS 5/12-3.3(a-5) (West 2024)), a class 2 felony. The charges stemmed from an encounter between defendant and I.W. on July 11, 2023. Count I alleged that defendant, while committing a criminal sexual assault, committed an act of sexual penetration with I.W., in that he, by the use of force, placed his penis in the vagina of I.W. and while doing so, caused I.W. bodily harm. Count II alleged that defendant, while committing a criminal sexual assault, committed an act of sexual penetration with I.W., in that he, by the use of force, placed his penis in the mouth of I.W. and while doing so, caused I.W. bodily harm. Count III alleged that defendant, while committing a criminal sexual assault, committed an act of sexual conduct with I.W., in that he, by

_____

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

the use of force, bit I.W.'s nipple, causing her bodily harm. Count IV alleged that defendant, while committing a domestic battery, knowingly caused harm to I.W., an intimate partner, in that he intentionally strangled I.W. about the neck area by applying pressure on the throat or neck of I.W., thereby impeding her normal breathing and rendering her unconscious.

¶ 6    On March 1, 2025, the State filed a verified petition to deny defendant pretrial release. In its petition, the State alleged that defendant was charged with detention-eligible offenses and he posed a real and present threat to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(a)(1.5) (West 2024) (certain felonies); 725 ILCS 5/110-6.1(a)(4) (West 2024) (domestic battery or aggravated domestic battery); 725 ILCS 5/110-6.1(a)(5) (West 2024) (sex offenses).

¶ 7    The State attached to its petition a sworn synopsis drafted by the arresting agency in this case. The synopsis provides that in June 2023, I.W. met defendant through a dating smartphone application. After exchanging text messages and phone calls, I.W. and defendant met in person. The two had a pleasant date and agreed to meet again. I.W. considered herself in a dating relationship with defendant. On the morning of July 11, 2023, I.W. invited defendant to her apartment for breakfast after his overnight shift had ended. While in the apartment, defendant groped I.W., placing his hand in her pants. When I.W. expressed discomfort with this action, defendant replied, "You don't tell me what to do or what not to do." I.W. then went to her living room and sat down to discuss defendant's inappropriate behavior. Defendant stood by I.W., grabbed the back of her head, removed his penis from his pants, and forced his penis into her mouth. I.W. attempted to withdraw, but defendant thrust his penis further into I.W.'s mouth, causing her to gag and nearly vomit. Defendant then ordered I.W. to take a shower.

¶ 8    I.W. showered, at which point defendant ordered her into her bedroom and onto her bed. Defendant then got on top of I.W. and penetrated her vagina with his penis. When I.W. attempted to break free, defendant ordered I.W. to readjust her position and continued to penetrate her. Defendant slapped I.W.'s buttocks repeatedly, causing bruises. While assaulting I.W., defendant placed his hand around I.W.'s throat, restricting her ability to breathe. Defendant increased his pressure as I.W. attempted to break free. At some point, I.W. fell unconscious. When she regained consciousness, defendant was slapping her face in an effort to revive her. Defendant then threatened I.W., telling her "don't you ever let that happen again." Defendant then continued to assault I.W. When defendant had finished assaulting I.W., he again ordered her to shower, as she was bleeding between her legs. Defendant also bit I.W. on her breast, which was noted by a nurse during a sexual assault examination.

¶ 9    After the assault, I.W. confided in a friend and sought help at a hospital. A sexual assault examination was administered, and vaginal tearing was noted, as well as bruising to I.W.'s buttocks, abrasions around her neck, and hair detached from her scalp. When police officers inspected I.W.'s apartment, she directed them to two used, bloody condoms. Defendant's DNA was present in the condoms. Further, defendant's DNA was present on the bite mark on I.W.'s breast. I.W. told officers that after the assault, she remembered several concerning statements made by defendant during their prior date, such as "I have a way to make women submissive to me." She indicated that the statements did not resonate with her until after she had been assaulted. When interviewed by police on May 24, 2024, defendant denied any sexual contact with I.W and denied harming her in any way.

¶ 10                      B. Detention Hearing

¶ 11    Judge Valdez held a hearing on the State's petition on March 2, 2025. The State first noted that defendant had no criminal history other than a few minor traffic violations. The State then proceeded to argument.

¶ 12    In arguing that the proof is evident or presumption great that defendant committed the charged offenses, the State noted that there was evidence corroborating I.W.'s statements. I.W. explained what happened to police, a sexual assault examination kit was completed, and various items were collected and forensically analyzed. Both the bite to I.W.'s breast and the bloody condoms recovered from her apartment showed the presence of defendant's DNA.

¶ 13    The State next argued that defendant poses a real and present threat to the safety of any person or persons of the community, specifically I.W. The State asserted that although defendant had "essentially no criminal history," the facts of this case were "very concerning" as defendant had made statements about making women "submissive" to him before committing a "very violent and horrendous aggravated criminal sexual assault." The State noted that defendant berated and threatened I.W. after "his own actions caus[ed] her to become unconscious by strangulation."

¶ 14    Finally, the State argued that there is no condition or combination of conditions that can mitigate the real and present threat to I.W. The State argued that defendant was unreliable, as he denied having any sexual contact with I.W. or harming I.W. in any way. This, it argued, demonstrated that defendant "is going to say and do what he thinks that he needs to do at this point for self-preservation." Further, the State argued that if defendant was released from custody, there were steps he might take in furtherance of "self-preservation," like contacting I.W. or otherwise interfering with prosecution of the case. Because the assault committed by defendant was violent, the State contended that conditions like electronic home monitoring (EHM) or a stay-away order were not sufficient to mitigate the risk of harm to I.W.

¶ 15    In response, defense counsel argued that the State failed to meet its burden by clear and convincing evidence that defendant poses a real and present threat to any person or persons based on specific articulable facts. Defense counsel noted that defendant had no criminal history and no psychological, psychiatric, or social history that indicates violent, abusive, or assaultive behavior. Further, defense counsel noted that defendant is employed "as a caregiver" and has a child who resides with him. Further, defense counsel argued that approximately two years had passed from the time of the alleged assault until charging, and defendant had not contacted I.W. Thus, counsel argued, there was not a clear and present threat posed to I.W.'s safety.

¶ 16    Additionally, defense counsel argued that there are conditions that can mitigate any threat posed by defendant's release. Defense counsel stated that "we have a clear identifiable victim that he could be ordered to stay away from," and that "[o]ne case does not completely overcome 44 years of following laws." Further, defense counsel stated that there was no basis for any allegations that defendant would try to interfere with prosecution of the matter.

¶ 17    The trial court denied defendant pretrial release. In his oral findings, Judge Valdez concluded that the State proved by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged. Initially, Judge Valdez noted that defendant did not have any criminal history, but taking into consideration the identity and the victim in the case, he found defendant posed a risk to I.W.'s safety. Judge Valdez considered defense counsel's argument that defendant had not contacted I.W. in the period between the assault and the time the incident was charged but stated that "there's a very significant reason to interact now, and I don't for a moment want her to have to look over her shoulder every day of her life until this matter is resolved." Accordingly, Judge Valdez found that found that the State had proven by clear and convincing evidence that defendant poses a real and present threat to the safety of

I.W. and the community based on the specific, articulable facts. Additionally, the court found that the State had proven by clear and convincing evidence that there are no conditions or combination of conditions of pretrial release that can mitigate the real and present threat posed by defendant. Judge Valdez reiterated his belief that based on the safety of I.W., there were no less restrictive conditions available.

¶ 18                                    C. Oral Motion for Conditions Hearing

¶ 19    On March 12, 2025, before Judge Barsanti, defense counsel made an oral motion to address defendant's detention. Defense counsel asserted that defendant's child was hospitalized in a psychiatric ward for mental health issues. Defendant is the child's legal guardian. Further, defendant had a significant other, but because defendant's significant other is not the child's legal guardian, she is unable to make medical decisions or decisions related to the child's education. If defendant were released, defense counsel stated he would be willing to submit to EHM and conditions that restrict movement except for the purposes of work and medical appointments for himself and his child. The trial court denied defendant's oral motion.

¶ 20                                    D. Motion for Relief and Notice of Appeal

¶ 21    On March 6, 2025, defendant filed a "Motion for Relief Under the Pretrial Fairness Act." See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In the motion, defense counsel disputed the court's findings that the State met its burden to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged, that defendant posed a real and present threat to the safety of any person or persons or the community, and that no conditions could mitigate any alleged threat. On March 19, 2025, defendant filed an "Addendum to Motion for Relief Under the Pretrial Fairness Act." In the addendum, defense counsel noted that defendant had a child for whom he was the sole caregiver. Defense counsel

asserted that defendant's child had ongoing mental health issues which defendant could not address while in custody.

¶ 22    A hearing on defendant's motion and the addendum was held before Judge Barsanti on March 26, 2025. At the hearing, defense counsel argued primarily that defendant was not a threat to the safety of I.W. or the community and there were less restrictive conditions available to detention. First, defense counsel asserted that defendant cooperated when interviewed by police and had not contacted I.W. in the time period between the occurrence of the assault and the date the offenses were charged. Thus, defense counsel argued that there was "no present threat for over a year." Further, defense counsel argued that the trial court erred in finding that there were no less restrictive conditions available, because the State provided no proof that defendant, who had no criminal history, would not be able to follow court orders. Counsel argued that defendant had not been inappropriate with I.W. or any other women since the time of the assault. Defense counsel reiterated her argument from the March 12, 2025, conditions hearing, noting that defendant was the sole caregiver for his child and would submit to EHM with conditions.

¶ 23    Judge Barsanti denied the motion for relief. Judge Barsanti noted "the length of time where the alleged victim in this matter [had] not been contacted by the defendant in any way." He stated that while that is "a pretty powerful argument," it was not justification to release defendant with conditions pending trial. Specifically, Judge Barsanti found that based on "the violence of this assault," there are no conditions or combination of conditions that would mitigate the danger to the community.

¶ 24    On March 27, 2025, defendant filed a notice of appeal. The court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. See Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024) (providing that a party may initiate an appeal by filing a notice of appeal in the circuit

court at any time prior to conviction). OSAD elected to file a memorandum under Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). The State filed a response in opposition to the appeal.

¶ 25                                    II. ANALYSIS

¶ 26     Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). In Illinois, all persons charged with an offense are eligible for pretrial release irrespective of the seriousness or the nature of the offense. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024); *People v. Grayson*, 2024 IL App (4th) 241100-U, ¶ 7. To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2024)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2024)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2024)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2024)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 27     In this case, no live testimony was presented. The parties proceeded solely by proffer. Accordingly, our review of the trial court's factual findings and its detention orders is *de novo*.

*People v. Morgan*, 2025 IL 130626, ¶ 54. Under *de novo* review, a reviewing court "perform[s] the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 28 At the outset, we note that defendant has forfeited those arguments that he raised in his motion for relief but abandoned in his memorandum on appeal. Defendant's motion for relief addressed three issues. It argued: first, that the State did not meet its burden to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offenses charged; second, that defendant posed a real and present threat to the safety of any person or persons or the community; and third, that no conditions could mitigate any alleged threat. During the hearing on the motion for relief, and in defendant's memorandum in support of his appeal, defense counsel only addressed the second and third arguments. *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21 (holding issues raised in motion for relief but not addressed in memorandum on appeal deemed abandoned). Accordingly, we address only those issues here.

¶ 29 In his memorandum, defendant first argues that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of I.W. based on the specific, articulable facts of the case. We disagree.

¶ 30 Under the Code, factors that the trial court may consider in making a determination of dangerousness, *i.e.*, that a defendant poses a real and present threat to any person or the community, include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense; (2) the history and characteristics of the defendant, including whether he or she has a prior criminal history indicative of violent, abusive, or assaultive behavior; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or

attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or any other form of supervised release from custody; and (9) any other factors, including those in section 110-5 of the Code (725 ILCS 5/110-5 (West 2024)), the court deems to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 31    Here, the synopsis indicates that the nature and circumstances of the charged crimes included violence and sex offenses. 725 ILCS 5/110-6.1(g)(1) (West 2024). Defendant grabbed I.W. with sufficient force to cause a braid of her hair to become detached from her head. He penetrated her orally, and when she withdrew, thrust with sufficient force to cause her to almost vomit. He penetrated her vaginally in a manner that caused bleeding and tearing. The attack included slapping and biting I.W., which left bruises and a bite mark on her body. When I.W. struggled to free herself from defendant's hand around her throat, he eventually strangled her to the point where she lost consciousness, and when I.W. regained consciousness, defendant was slapping her in the face. This assault was notably violent. Additionally, defendant had previously communicated to I.W. that he had "a way to make women submissive" to him. 725 ILCS 6/110-6.1(g)(4) (West 2024). Although defendant has no criminal history, is not known to have access to weapons, and was not on probation or parole or any type of supervised release at the time of the alleged assault, these factors do not outweigh the threat posed by defendant. 725 ILCS 6/110-6.1(8), (9) (West 2024).

¶ 32    In support of his contention that he does not pose a real and present threat to the safety of

I.W. or the community, defendant cites *People v. Crawford*, 2024 IL App (3d) 230668, for the proposition that inaction during the period between committing the alleged assault and the offenses being charged demonstrates that an offender does not pose a real and present threat. In *Crawford*, the appellate court reversed the trial court's order denying the defendant's pretrial release where the defendant had been charged with stalking but had abided by the conditions of an order of protection and moved far away from the victim. *Id.*, ¶ 10. We find defendant's reliance on *Crawford* to be misplaced, as the Code requires that decisions regarding detention prior to trial be individualized and based on the specific, articulable facts of the case. 725 ILCS 5/110-6.1(f)(7), (g) (West 2024); see *People v. Davis*, 2025 IL App (2d) 240663-U, ¶ 21 (distinguishing *Crawford*, 2024 IL App (3d) 230668, where the defendant had no criminal history, had not committed any new offenses in the period between committing the alleged offenses and when they were charged, but where the specific, articulable facts supported the conclusion that the defendant posed a real and present threat to the safety of any individual or the community). Here, based on an individualized determination of the specific, articulable facts, we find defendant to pose a real and present threat to the safety of I.W. as well as the community.

¶ 33    Next, defendant argued in his motion for relief that the State failed to meet its burden of proving by clear and convincing evidence that there are no conditions that could mitigate the real and present threat to I.W. based on the specific, articulable facts of the case. Again, we disagree.

¶ 34    In determining which conditions of pretrial release, if any, will ensure the safety of any person or persons or the community, the trial court may consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of

obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1)-(5) (West 2024). The history and characteristics of the defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings" as well as " whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2024).

¶ 35    Here, the nature and circumstances of the charged offenses included significant violence, with defendant forcibly penetrating I.W., hitting and biting her, strangling her until she lost consciousness, slapping her in the face to revive her, and threatening her when she regained consciousness. The weight of the evidence against defendant was robust. The assault was corroborated when I.W. received a sexual assault examination, where she was observed to have vaginal tearing, bruising, and abrasions around her neck. Further, defendant's DNA was retrieved from a swab of the bite mark on I.W.'s breast and the condoms retrieved from her apartment.

¶ 36    Furthermore, where, as here, defendant is charged with aggravated domestic battery, the court may consider additional factors, including whether the alleged incident involved harassment or abuse, as defined in the Illinois Domestic Violence Act of 1986 (725 ILCS 5/110-5(a)(6)(A) (West 2024)), and "the severity of the alleged incident that is the basis of the alleged offense, including, but not limited to, the duration of the current incident, and whether the alleged incident involved [] physical injury, sexual assault, [or] strangulation []." 725 ILCS 5/110-5(a)(6)(H) (West 2024). The incident here certainly involved abuse. 750 ILCS 60/103(1) (West 2024) (" 'Abuse'

means physical abuse."). The record does not indicate the duration of the alleged attack, but based upon the proffer, we conclude it was not brief. We also find it was severe, as it included alleged physical injury, multiple sexual assaults, and strangulation to the point of unconsciousness.

¶ 37    It is true that defendant's prior criminal history is not indicative of violent, abusive, or assaultive behavior. However, based on the violent nature of the offenses charged, we agree with the trial court that the conditions of release discussed by the parties, including EHM, GPS, or a no-contact-and-stay-away order, would not assure I.W.'s safety or the safety of the community. The ability of EHM to prevent harm is dependent on the ability of law enforcement to intervene once a violation of the conditions of release is detected.

¶ 38    We acknowledge that, under the Act, all persons are presumed eligible for pretrial release (725 ILCS 5/110-2 (West 2024)) and that "the bare allegations that defendant has committed a violent offense are not sufficient to establish" the conditions prong of the State's burden of proof for detention. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. But as the State argued at the detention hearing: "this is so much more than just the name: Aggravated Criminal Sexual Assault []." The evidence of the charged conduct, "even if it took place on a single occasion," (*People v. Romine*, 2024 IL App (4th) 240321, ¶ 20) may be such that "it becomes difficult to predict defendant's compliance with court orders." *Id.* That is the case here, where the extreme violence of the allegations bespeaks a poor risk for pretrial release under any conditions.

¶ 39    Hence, we conclude that the State met its burden of proving by clear and convincing evidence that no condition or combination of conditions would mitigate the real and present threat defendant poses to I.W and the community.

¶ 40                                III. CONCLUSION

¶ 41    For the reasons set forth above, we affirm the judgment of the circuit court of Kane County.

¶ 42    Affirmed.