2024 IL App (2d) 240257-U
No. 2-24-0257
Order filed July 12, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-607 |
| JIMMY L. NICHOLSON, | ) ) ) | Honorable Kathryn D. Karayannis |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The specific facts of the case, as presented by the State, did not support a finding of dangerousness as required for defendant's pretrial detention.

¶ 2   Defendant, Jimmy L. Nicholson, timely appeals the Kane County circuit court's order of pretrial detention pursuant to Public Acts 101-562 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] For the reasons below, we reverse and remand for further proceedings.

_____

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act or the Pretrial Fairness Act. However, none of these names appear within the Illinois

¶ 3                                   I. BACKGROUND

¶ 4     On March 23, 2024, defendant was charged with trafficking a controlled substance (720 ILCS 570/401.1(a) (West 2022))[2], possession of 900 or more grams of methamphetamine (720 ILCS 646/60(a) (West 2022)), and possession of a 900 or more grams of methamphetamine with intent to deliver (*id.* § 55(a)(1) (West 2022)). That same day, the State filed its verified petition to deny defendant pretrial release, arguing that the defendant's pretrial release posed "a real and present threat to the safety of any person or persons or the community." See 725 ILCS 5/110-6.1(a)(1) (West 2022)).

¶ 5     On March 24, 2024, the circuit court heard arguments on the State's petition. During the hearing, the State cited a police synopsis to proffer that, in July 2023, undercover police officers contacted defendant to arrange a sale of 10 pounds of methamphetamine. However, defendant ultimately advised the undercover officers that he could not complete their deal and "all communication stopped."

¶ 6     Then, on March 16, 2024, defendant—who was now living in Wisconsin—reinitiated communications with the undercover officers and, using coded language, described pricing for a

_____

Compiled Statutes or public acts.

    [2] We note that the language of section 401.1(a) specifically exempts methamphetamine, which defendant was alleged to have trafficked. 720 ILCS 570/401.1(a) ("[A]ny person who knowingly brings or causes to be brought into this State for the purpose of manufacture or delivery or with the intent to manufacture or deliver a controlled substance other than methamphetamine or counterfeit substance in this or any other state or country is guilty of controlled substance trafficking"). Instead, we presume that the State meant to charge defendant under 720 ILCS 646/56 (West 2022), which specifically pertains to the trafficking of methamphetamine.

proposed methamphetamine sale. Defendant and officers discussed matters such as sampling and quality of the methamphetamine, and defendant eventually scheduled a meeting with officers to deliver the drugs. On March 22, 2024, police stopped a vehicle containing defendant as a passenger, which was on route to the Elgin address where the proposed sale was to take place. Police uncovered 1020 grams of methamphetamine from the vehicle.

¶ 7    Following the State's proffer, defendant generally argued that the State had not alleged any violent conduct on behalf of defendant to justify his detention. Furthermore, defendant argued that he had heart issues and required a stent "to continue his ability to live essentially."

¶ 8    The State referenced the fact that, in 2019, defendant was convicted of possession with intent to sell cocaine. The State further argued:

"Judge, this defendant is an absolute danger to the community. When determining dangerousness, while looking at the charges, you are to determine the specific articulable facts to determine that dangerousness. The defendant has a Wisconsin residence. The defendant went to Michigan and then drove to Illinois with over a thousand grams of methamphetamine in a vehicle.

Judge, he is a safety—he is a danger to society as a whole, to the state of Illinois, to the city of Elgin. He specifically drove to Elgin with these drugs in the vehicle."

The State further specified that he was 47 years of age, and that there was no indication defendant had access to any weapons. The State argued that no conditions could mitigate the threat defendant posed to the community, as electronic home monitoring would "not monitor or prevent the defendant from possessing drugs again, conducting other drugs sales or going from state to state to traffic more drugs."

¶ 9    After hearing the parties' arguments, the court noted that the instant offense involved "the highest quantity [methamphetamine] that can be charged under the statute." The court continued:

"It is conjoined with the fact that there is a charge which I find both this charge and the other charge by clear and convincing evidence there is evidence of those, clear and convincing evidence of those, that his is a detainable offense. So you put those two things together, the quantity of these drugs, \*\*\* this is over a thousand grams of methamphetamine that are being transported by someone that is willing to come across state lines."

¶ 10    The court found that defendant's release posed a risk to the community "not only based upon the amount but the fact they are coming across state lines. They are being transported in a vehicle." The court found no conditions could mitigate the threat to the public and ordered defendant to be detained.

¶ 11    Defendant timely appeals under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023).

¶ 12                                II. ANALYSIS

¶ 13    Under the Code, all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022); *People v. Stock*, 2023 IL App (1st) 23175, ¶ 18. For the court to order a defendant's pretrial detention, the State must prove, by clear and convincing evidence, that the defendant: (1) has committed a qualifying offense; (2) poses a "real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" or shows "a high likelihood of willful flight to avoid prosecution;" and (3) no conditions could mitigate such a threat, or the defendant's willful flight. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). Our standard of review is two-fold. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. We review the trial court's factual findings under the manifest-weight-of-the-evidence standard, while reviewing the court's "ultimate determination regarding pretrial release" for an abuse of discretion. *Id.*

¶ 14    Defendant raises two arguments on appeal, that both the trial court's rulings as to defendant's dangerousness and the applicability of any mitigating conditions were against the manifest weight of the evidence. Because we agree that the trial court's findings as to dangerousness were against the manifest weight of the evidence, however, we need only consider defendant's first point.

¶ 15    Because all criminal defendants are eligible for pretrial release under the Code, pretrial detention cannot be solely predicated upon a finding that a defendant has committed a detainable offense. *Stock*, 2023 IL App (1st) 23175, ¶ 18. Thus, in addition to showing clear and convincing evidence that the proof was evident that defendant committed a detainable offense, the State needed to show clear and convincing evidence that his release posed a danger to any persons or the community, and that no conditions could mitigate such a threat, in order for defendant to be detained. 725 ILCS 5/110-6.1(e) (West 2022). To this point, the Code provides the following, non-exhaustive factors that a court may consider when making a dangerousness finding:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g) (West 2022).

¶ 16   It is clear from the record that these factors did not support a finding of dangerousness. For instance, defendant was not charged with a crime of violence that involved any weapons. *Id.* § 110-6.1(g)(1). There was no indication in the record that defendant had a history of any violent or assaultive behavior, and defendant had no history of committing any violent crimes in the past. *Id.* § 110-6.1(g)(2). The State did not identify any specific victims to whom defendant posed a threat. *Id.* § 110-6.1(g)(3), (6). Defendant was 47 years old at the time of the hearing and has a history of

heart issues. *Id.* § 110-6.1(g)(5). Defendant was not known to possess any firearms. *Id.* § 110-6.1(g)(7).[3] Defendant was not on probation at the time of the instant offenses. *Id.* § 110-6.1(g)(8).

¶ 17    Nonetheless, the trial court concluded that defendant's pretrial release posed a danger to the community. In reaching this conclusion, the court exhaustingly reiterated the fact that defendant had used a vehicle to transport methamphetamine across state lines. However, this conduct is inherent from defendant's trafficking charge, which necessarily involves the transport of methamphetamine across state lines. 720 ILCS 646/56 (West 2022) ("[A]ny person who knowingly brings, or causes to be brought, into this State methamphetamine*** for the purpose of manufacture or delivery of methamphetamine or with the intent to manufacture or deliver methamphetamine is guilty of methamphetamine trafficking").[4] It is true that the trial court also noted the fact that defendant was transporting over 1000 grams of methamphetamines, stating that this was the "highest amount" he could be charged for. However, had the legislature determined that possession with intent to deliver more than 900 grams of methamphetamine was an offense requiring automatic detention, it would have said so. See *People v. Norris*, 2024 IL App (2d)

---

[3] We note that we affirmed the pretrial detention order pertaining to defendant's codefendant, who was driving the vehicle containing the methamphetamine. *People v. Brown*, No. 2-24-0254 (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)). There, unlike here, the defendant's criminal history consisted of multiple felonies, which included a weapons offense. *Id.*, ¶ 6. We found the weapon offense to be "highly probative of [the defendant's] potential danger to the community." *Id.*

[4] Again, we recognize that defendant's trafficking charge was incorrectly brought under 720 ILCS 570/401.1(a). Regardless of the correct citation, the court erred when it solely relied on the conduct underlying that charge to support its dangerousness finding.

230338-U, ¶ 37. This is not to say that the weight of any possessed drugs is irrelevant in determining the danger that a defendant's pretrial release poses. Instead, we reiterate that, per the Code, *specific evidence* of dangerousness must be adduced aside from a general recitation of the charges a criminal defendant faces. *Stock*, 2023 IL App (1st) 23175, ¶ 18. Here, by basing its dangerousness finding solely on defendant's transport of a certain weight of methamphetamine across state lines, the court erroneously "substituted a finding that the proof was evident or the presumption great that defendant committed the alleged offense for a finding that defendant['s release] posed a real and present threat to the safety of the community." *People v. Drew*, 2024 IL App (2d) 230606-U, ¶ 18. Accordingly, because the applicable factors and specific facts of this case do not support a finding of dangerousness, the trial court's decision was against the manifest weight of evidence. For this reason, we reverse the trial court's detention order, and remand so that the court may find appropriate conditions for defendant's release.

¶ 18                                          III. CONCLUSION

¶ 19    For all of these reasons, we reverse the judgment of the circuit court of Kane County and remand for further proceedings consistent with this order.

¶ 20    Reversed and remanded with directions.