2025 IL App (2d) 250130-U
No. 2-25-0130
Order filed July 7, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 25-CF-34 |
| | ) ) | Honorable |
| JORGE BARAJAS, | ) ) | Carl E. Metz, II, and Tiffany E. Davis, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Schostok and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's detention order is reversed because the State failed to present any facts specific to defendant that his pretrial release posed a real and present threat to the community.

¶ 1    Defendant, Jorge Barajas, appeals orders of the circuit court of McHenry County granting the State's petition to deny pretrial release and denying his motion for relief pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We reverse and remand with directions to order defendant's release with appropriate conditions.

¶ 2                                    I. BACKGROUND

¶ 3      On January 13, 2025, defendant was charged by complaint with two counts of manufacture

or delivery of 15 grams or more but less than 100 grams of cocaine (720 ILCS 570/401(a)(2)(A)

(West 2024)) (Class X felony), two counts of manufacture or delivery of 15 grams or more but

less than 100 grams of fentanyl (*id*. § 401(a)(1.5)(A)) (Class X felony), two counts of possession

of 15 grams or more but less than 100 grams of cocaine (*id*. § 402(a)(2)(A)) (Class 1 felony), and

two counts of unlawful possession of a controlled substance (*id*. § 402(c)) (Class 4 felony).

¶ 4      Defendant was arrested on January 20, 2025.  That same day, the State filed a verified

petition to deny pretrial release, alleging that defendant was charged with detainable offenses and

that his pretrial release would pose a real and present threat to the safety of the community that

could not be mitigated by any conditions of release.  725 ILCS 5/110-6.1(a)(1) (West 2024).

¶ 5      At the hearing on the petition, the State presented evidence by way of proffer, relying on

the probable cause statement it had used to obtain the arrest warrant.  According to the statement,

defendant and Ivan E. Ruiz (who was later charged as a co-defendant), sold cocaine cut with

fentanyl to a confidential informant on two occasions, with each transaction involving

approximately 28.9 grams[1] of substance.  The transactions, which occurred on May 8 and May 29,

2024, occurred at pre-arranged locations and involved a black Dodge SUV driven by defendant.

Both encounters were arranged by cell phone, with defendant coordinating the first and Ruiz

coordinating the second.  In both transactions, Ruiz handed the confidential informant a clear

plastic baggie containing a white, chunky substance with the appearance and odor of cocaine.  The

substance field-tested positive for the presumptive presence of both cocaine and fentanyl.  The

probable cause statement further noted that law enforcement had been encountering large

---

[1]This is approximately 1.02 ounces.

quantities of cocaine adulterated with fentanyl, which had caused several overdose deaths in McHenry County during the past year.

¶ 6    The State argued that defendant posed a real and present threat to the community based on his involvement in the controlled narcotics transactions, each involving "large amounts of cocaine." As in the probable cause statement, the State asserted that fentanyl-laced cocaine posed serious health risks to the community and noted that such substances had caused several overdose deaths in the county over the past year. The State also asserted that "drug distribution is an inherently dangerous business" because it endangered users' health as well as placed distributors at risk due to "a tendency to encourage violent crime in connection with the drug trade." The State argued that no conditions could mitigate the threat that defendant's pretrial release posed because "drug dealing *** can happen anywhere."

¶ 7    Defendant argued that the State was improperly relying on the nature of the charged offenses, alone, to establish that he posed a danger to the community and that no conditions could mitigate that risk. He acknowledged the seriousness of the Class X charges but maintained that the court could impose various release conditions, such as placing him on electronic home monitoring and requiring random drug testing. Defendant also emphasized that he was a lifelong Illinois resident with no criminal history and that the alleged offenses occurred in May 2024, approximately eight months earlier.

¶ 8    The trial court granted the State's petition to deny pretrial release. It found that the proof was evident or the presumption great that defendant committed a detainable offense. Regarding dangerousness, the court stated that "selling cocaine that's been cut with fentanyl is a real and present threat to the community at large," and it was aware that fentanyl had caused overdose deaths "not infrequently in McHenry County." The court additionally found that no conditions

could mitigate the risk defendant's pretrial release would pose because defendant had driven "a significant distance" from his home in Berwyn to conduct the drug transactions in McHenry County. The court rejected defendant's assertion that random drug screenings or electronic home monitoring (EHM) could mitigate that risk, because defendant was not alleged to be a drug user and could still obtain and distribute drugs from his home.

¶ 9     At the next hearing, on February 18, 2025, defendant again sought pretrial release. In opposition, the State emphasized that defendant was alleged to have sold "massive amounts of cocaine laced with Fentanyl, very dangerous to the community." It continued that "[p]eople die all the time from drugs laced with Fentanyl," and defendant "does pose a real and present risk to the community making these sales within our community." It also argued that home confinement would not mitigate that danger because "[p]eople can make narcotics purchases at their home." The trial court ordered defendant's continued detention.

¶ 10     On March 26, 2025, defendant filed a motion for relief under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) arguing that the State impermissibly relied only on the offenses to demonstrate that his pretrial release would pose an unmitigable danger to the community.

¶ 11     At the March 28, 2025, hearing on defendant's motion for relief, defendant argued that "the Court actually just used the offense to determine dangerousness and did not address the factors in 725 ILCS 5/110-6.1 to make that determination," asserting that all the statutory factors favored his release. He emphasized that he was a 43-year-old man with no criminal history, had scored a level 2 on the pretrial risk assessment, and argued that the State's decision to wait eight months between the alleged offenses and its request for an arrest warrant undermined any claim that he posed a real and present threat to the community. Defendant also stated that he suffered from substance abuse issues and, if released pending trial, could be placed on pretrial supervision with

requirements such as drug screenings, EHM, or other conditions.

¶ 12    In opposition, the State highlighted the trial court's earlier comments at the detention hearing, including that it had considered all relevant dangerousness factors and made an individualized assessment of the case.  As to conditions, the State argued that neither GPS monitoring nor drug screenings would mitigate the risk that defendant's pretrial release would pose because narcotics can be sold "literally anywhere."  The State also questioned whether drug testing and substance abuse treatment would mitigate the risk of future drug sales.  In response to the court's inquiry, the State explained that it did not have the lab test results for the suspected narcotics because the sheriff's office did not submit the substances to the lab for analysis until defendant was charged in January 2025—even though the alleged offenses occurred in May 2024.

¶ 13    After hearing arguments, the trial court denied defendant's motion for relief and ordered his continued detention.  The court reiterated its prior findings, including that defendant was alleged to have sold more than 25 grams of cocaine cut with Fentanyl on two occasions, that he traveled a considerable distance to do so, and that the substances were extremely dangerous, citing their high overdose and fatality risks.  The court also commented, "[i]f we were under the monetary bail statute, it is possible the Defendant would have had a monetary bail, and he would have posted it, and he would be out of custody right now."

¶ 14    Defendant timely filed a notice of appeal.

¶ 15                                    II. ANALYSIS

¶ 16    Article 110 of the Code, as amended, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024).  Under section 110-6.1 of the Code (725 ILCS 5/110-6.1(e) (West 2024)), all criminal defendants in Illinois are presumed eligible for pretrial release.  To overcome that presumption,

the State bears the burden of proving, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or the community based on the specific articulable facts of the case; and (3) no condition or combination of conditions of pretrial release could mitigate that real and present threat, based on the specific articulable facts of the case. *Id.* § 110-6.1(e). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. Where, as here, the parties proceed solely by proffer at the detention hearing, we review *de novo* the circuit court's detention determination. *People v. Morgan*, 2025 IL 130626, ¶ 54. Under *de novo* review, we perform the same analysis that the trial court would perform using the proper standards. *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 17    Because all criminal defendants are presumed eligible for pretrial release, pretrial detention must not be predicated exclusively upon a finding that a defendant has committed a detainable offense. *People v. Stock*, 2023 IL App (1st) 23175, ¶ 18. "More is required" than stating the basic elements of a detainable offense (*id.*), because the State must also demonstrate, by clear and convincing evidence, that a defendant's release would pose a threat to the community and that no conditions could mitigate that threat. 725 ILCS 5/110-6.1(e) (West 2024). See *Stock*, 2023 IL App (1st) 231753, ¶ 18 ("If the base allegations that make up the *sine quo non* of a violent offense were sufficient on their own to establish [dangerousness] then the legislature would have simply deemed those accused of violent offenses ineligible for release").

¶ 18    Defendant argues on appeal that the State failed to present any evidence, beyond the charges themselves, to prove by clear and convincing evidence that (1) his pretrial release would

pose a real and present threat to the community and (2) no conditions could mitigate that threat. We agree with the first proposition and therefore need not reach the second.

¶ 19    In assessing a defendant's dangerousness, a court may consider the nonexclusive list of factors set forth in the Code, including: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of that threat; (4) any statements made by or attributed to defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of any victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody; and (9) any other factors including those listed in section 110-5 of the Code.  725 ILS 5/110-6.1(g) (West 2024).  A court's decision to detain prior to trial "must be individualized, and no single factor or standard may be used exclusively to order detention."  *Id*. § 110-6.1(f)(7).

¶ 20    At the detention hearing, the State presented the following argument regarding defendant's dangerousness:

> "[T]he probable cause statement does *** provide information that ties in with the threat to the community that these substances do pose.  It does briefly discuss the potential for overdoses occurring as a result of this substance.  Specifically, that fentanyl-laced cocaine has also been responsible for several overdose deaths in our County in the past year, but on top of that, Judge, drug distribution is an inherently dangerous business.  It does pose a threat to the community both for the consumers [and] the distributors because

it does pose a health risk. It also has a tendency to encourage violent crime in connection with the drug trade."

¶ 21 This argument lacks any specific articulable facts concerning defendant. Instead, it rests solely on general observations regarding widely accepted truths: that cocaine cut with fentanyl is "inherently dangerous," "pose[s] a health risk" to consumers, and "has a tendency to encourage violent crime." But under the Act, the question is not whether these substances pose a threat to the community. They plainly do. The relevant question is whether defendant's pretrial release would pose a real and present threat to the community. In this portion of its argument before the trial court, the State did not even mention defendant who, at that time, was presumed eligible for pretrial release. We have consistently held that generalizations about the societal harm caused by drug sales, standing alone, are insufficient to demonstrate that pretrial release of a defendant charged with drug offenses poses a threat to the community. *People v. Norris*, 2024 IL App (2d) 230338-U, ¶ 37 ("if the generalized risk of societal harm from drug crimes, alone, was sufficient to establish that any defendant charged with them automatically presents a danger to the community, then the legislature would have made those crimes ineligible for release"); *People v. Drew*, 2024 IL App (2d) 230606-U, ¶ 19 ("[t]he plain language of section 110-6.1(e) demands more from the trial court than a general conclusion that the alleged drug offense is inherently dangerous to the community; the Code requires a finding that defendant's pretrial release posed a real and present threat to the safety of the community *** such as by showing a real threat of violence or abuse to members of the community upon release"); *People v. Nicholson*, 2024 IL App (2d) 240257-U, ¶ 17 ("*specific evidence* of dangerousness must be adduced aside from a general recitation of the charges a criminal defendant faces" (emphasis in original.)).

¶ 22    At the detention hearing, when the State was pressed to articulate any specific danger posed by defendant beyond the charged offenses, it again pointed only to the charged offenses, noting that they were "detainable" and involved "two separate controlled drug buys *** for fentanyl and cocaine" which, according to the probable cause statement, were responsible for recent overdose deaths in the county.  The State repeats these arguments on appeal and contends that it presented specific articulable facts, beyond the charged offenses, that defendant's pretrial release would pose a threat to the community.  It emphasizes the amount of fentanyl-laced cocaine allegedly sold (28.9 grams on two occasions), its lethality, and the fact that defendant traveled from Cook County to McHenry County to conduct these transactions, which were charged as Class X offenses.

¶ 23    Once again, the State fails to identify any individualized facts or evidence showing that defendant posed a real and present threat to any person or the community.  It did not allege or present any evidence that defendant had used or possessed any weapons (725 ILCS 5/110-6.1(g)(7) (West 2024)), engaged in threats or violence (*id*. § 110-6.1(g)(2)), had a criminal record or troubled history (*id*. § 110-6.1(g)(2)(A)), or targeted vulnerable individuals (*id*. §§ 110-6.1(g)(3), (6)).  The State also did not assert that defendant made any direct statements or any statements that could be attributed to him.  *Id*. § 110-6.1(g)(4).  Defendant was not charged with a crime of violence or a sex offense involving a weapon.  *Id*. § 110-6.1(g)(1).  On the contrary, it was uncontested that defendant was a 43-year-old man (*id*. § 110-6.1(g)(5)) with no criminal history (*id*. § 110-6.1(g)(2)), and he scored a level 2 (out of 6) on the pretrial risk assessment (with the only risk assessment factors applicable to him being that he was facing felony drug charges in the instant offenses and, because of his seasonal construction job, was unemployed at the time of arrest).  Contrary to the State's position, the fact that defendant was accused of selling 28.9 grams of cocaine cut with fentanyl to a confidential informant on two occasions and subsequently charged

with Class X offenses is not evidence of dangerousness beyond what is already inherent in the charges themselves—two counts of manufacture or delivery of 15 grams or more but less than 100 grams of cocaine (720 ILCS 570/401(a)(2)(A) (West 2024) (Class X felony)), two counts of manufacture or delivery of 15 grams or more but less than 100 grams of fentanyl (*id*. § 401(a)(1.5)(A)) (Class X felony). See *People v. Nicholson*, 2024 IL App (2d) 240257-U ("by basing its dangerousness finding solely on defendant's transport of a certain weight of methamphetamine across state lines, the court erroneously 'substituted a finding that the proof was evident or the presumption great that defendant committed the alleged offense for a finding that defendant['s pretrial release] posed a real and present threat to the community' " (quoting *People v. Drew*, 2024 IL App (2d) 230606-U, ¶ 18)). These bare references to the charged offenses cannot substitute for the individualized showing of dangerousness that the Act requires. See *Norris*, 2024 IL App (2d) 230338-U, ¶ 39 ("the State's broad arguments that defendant had engaged in drug crimes, which could result in an overdose and which, generally, wreak havoc on families, was akin to suggesting that no person charged with such a crime could ever be eligible for pretrial release, which is contrary to the Code's requirements"). Contrary to the State's position, the quantity of drugs allegedly sold and the Class X nature of the charges reflect the offense itself; they do not demonstrate an additional indicium of dangerousness.

¶ 24    Relying on *People v. Woods*, 2024 IL App (4th) 240190, the State suggests that the general threat posed by drug crimes—particularly those involving cocaine cut with fentanyl, is sufficient to justify defendant's pretrial detention. See *id*. ¶ 20 ("The societal harm from drug crimes is well-established in Illinois law, meaning the baseline question of whether the sale of drugs is a threat to the community has been answered"). In *Woods*, the Fourth District criticized our decisions in *Drew* and *Norris* for, in its view, failing to give "any weight to their defendants'

respective criminal histories in finding the trial courts erred in concluding the defendants posed a real and present threat to the community." *Id*. ¶ 19. The *Woods* court cautioned that under the logic of *Drew* and *Norris*, "so long as a defendant does not have a violent or abusive history \*\*\* or [is not] linked to a specific overdose," one could repeatedly sell Class X amounts of cocaine and never be deemed a threat to the community. *Id*. It further asserted that those cases "appear to hold [that] a real and present threat to the community cannot be established through both 'the generalized risk of societal harm from drug crimes' and a defendant's history of drug dealing." *Id*. ¶ 20. Unlike in *Woods*, where the defendant had "multiple convictions for selling drugs" and "continued to do so, even when on parole for another charge" (*id*. ¶ 21), the record here contains no such evidence. The State failed to present any individualized showing that defendant, who has no criminal history or convictions and received a low-risk score, would endanger the public if released. Moreover, the State's decision to wait eight months before seeking a warrant for defendant's arrest suggests that it did not view him as a real and present threat to the community. The concern animating *Woods*—that a truly dangerous repeat offender might escape pretrial detention under an overly rigid statutory framework—is simply not implicated in this case.

¶ 25 *People v. Carpenter*, 2024 IL App (1st) 240037, likewise does not support the State's position. There, the defendant argued that the State's proffer was inadequate because it consisted only of "the facts of the alleged crime, of which [the defendant] is presumed innocent." Rejecting this reasoning, the *Carpenter* court explained:

> "Under this reasoning, defendant seems to suggest that a defendant can only be detained based on facts *other than* the crime charged. Not so. Defendant's contention finds no support in the language of the Code. The nature and circumstances of the offense

charged is the *prime* consideration in \*\*\* making the dangerousness determination." (Emphasis added.) *Id.*

The court continued, "[t]o conclude otherwise would mean that a true first offender—regardless of how heinous the offense charged[,] or the obvious danger presented—could never be detained pretrial, because in such a case, the only evidence available would consist of the nature and circumstances of the crime charged." *Id.* ¶ 15. In other words, proof as to the danger that a defendant's pretrial release would pose may overlap with the elements of the offense charged, "but that does not render those facts any less compelling." *Id.* ¶ 17. But, unlike in *Carpenter*, the State here neither offered argument or evidence that the nature and circumstances of the charged offenses were particularly heinous nor presented facts that heightened the danger posed by this defendant necessary to support a finding of dangerousness. Indeed, the conduct detailed in the probable cause statement is indistinguishable from any other pre-arranged controlled narcotics transaction involving a confidential informant. Neither transaction involved violence, weapons, threats, or any facts suggesting that defendant's release would create a real and present threat. On the contrary, the record demonstrates that the court's decision rests entirely on the bare elements of the offense charged, and neither it nor the State identified any individual facts or circumstances showing that *this* defendant poses a real and present threat to the community if released.

¶ 26 Because the State failed to present specific articulable facts establishing that defendant's pretrial release would pose a real and present threat to the community, the circuit court erred in granting the State's petition for pretrial detention.

¶ 27 III. CONCLUSION

¶ 28 For the above reasons, we reverse the judgment of the circuit court of McHenry County and remand with directions to order defendant's release with appropriate conditions.

¶ 29    Reversed and remanded with directions.