NOTICE
Decision filed 04/21/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260055-U

NO. 5-26-0055

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-11 |
| | ) | |
| RAY GARRISON, | ) | Honorable |
| | ) | Johannah B. Weber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Cates and Justice Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    The defendant, Ray Garrison, appeals the January 9, 2026, order from the trial court of Jefferson County that granted the State's petition to deny pretrial release and the January 16, 2026, denial of his motion for relief and immediate release. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    On January 8, 2026, the defendant was charged by information with one count of armed violence, a Class X felony (count I); one count of unlawful possession of a stolen firearm, a Class 2 felony (count II); one count of unlawful possession of a firearm with defacing identification marks, a Class 3 felony (count III); and one count of unlawful possession of methamphetamine, a

1

Class 3 felony (count IV). On January 9, 2026, the State filed a verified petition to deny the defendant pretrial release, alleging that the defendant was charged with a detainable offense, that his release posed a real and present threat to the safety of any person or persons in the community, and that no condition or combination of conditions exist which were less restrictive to prevent the defendant from committing further criminal conduct or appearing for further court dates. The matter proceeded to a hearing on the petition the same day.

¶ 5                    A. Petition to Deny Pretrial Release

¶ 6    At the hearing on the petition to deny pretrial release, the State proceeded by proffer. The State proffered that Detective Hails of the Mount Vernon Police Department (MVPD) would testify that, on January 7, 2026, at approximately 7:20 a.m., he, along with MVPD and the Jefferson County Sheriff's Office High Risk Team (HRT), executed a search warrant at the defendant's home in Belle Rive, Illinois. The MVPD and HRT gave verbal commands for the occupants to exit with their hands up. Kristy Garrison (Kristy), the homeowner and the defendant's mother, exited the residence. Kristy reported that she, her boyfriend Kyle Tucker, and her sons, Ray Garrison and Jonathan Garrison, lived at the residence. Kristy confirmed that the defendant was inside the residence and provided information regarding firearms in the home. Kristy stated that she had a firearm owner's identification (FOID) card and possessed a black-and-gray 12-gauge shotgun in the living room, a .380 pistol in a safe, a .22 rifle in a safe, a .22 revolver she believed was in the closet near the safe, and two antique guns in the safe. She stated that all of the firearms were registered to her. She further confirmed that she was the only person in the residence with a FOID card.

¶ 7    MVPD and the HRT then breached the home and found the defendant in his bedroom. The defendant was taken into custody and escorted outside, where Detective Hails searched him and

2

found a ski mask and gloves in his pocket. The defendant was given his *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), which he stated he understood and confirmed his identity as Ray Garrison. The defendant stated there was a loaded black Glock with a red laser in his bedroom that he had obtained from a friend. The defendant stated that he believed the Glock was stolen. When asked who gave him the Glock, the defendant stated that it was a personal matter and declined to identify the person from whom he obtained it.

¶ 8     Upon entering the defendant's bedroom, Detective Hails observed a black Glock pistol with a laser attachment lying next to the bed with a loaded magazine beside it. The Glock's serial number was defaced, but enough remained visible to read the markings BYFP658. Also discovered were 9-millimeter rounds in a clear plastic baggie on the nightstand, .22-caliber rounds on a plastic container on a TV stand, what appeared to be a methamphetamine pipe on the TV stand, mail addressed to the defendant at a different address, multiple holsters for small firearms, a Flambeau-brand soft shotgun case in the closet, a camouflage rifle with a scope in the closet, and a black SSM Healthcare bag on the floor containing what appeared to be a methamphetamine pipe, a small amount of methamphetamine, a box of 115-grain full metal jacket 9-millimeter Luger ammunition, a scale, additional .22-caliber ammunition, multiple gun cases, and a Ruger rifle. Detective Hails also located a Toyota key fob and a Hyundai key fob in the room. An officer advised that a Toyota had been reported stolen from the area. The Toyota was later located; however, towing was necessary to recover the vehicle as the victim reported that the key fob could not be located. The victim suspected involvement by individuals associated with the area where the theft occurred.

¶ 9     Detective Hails searched a second bedroom down the hall, where he observed medication for Kyle Tucker on a dresser with a shotgun round on the same dresser. A belt with ammunition was hanging from a light fixture next to the bed. Detective Hails then went to the back bedroom

3

and opened Kristy's safe using the combination she provided. Detective Hails observed a black .380 pistol and a .22 rifle. On a shelf outside the safe, he saw a .22 revolver and two antique guns. Detective Hails did not locate the black-and-grey 12-gauge shotgun that Kristy stated was in the living room. Detective Hails additionally found boxes of Winchester Super-X 12-gauge pellets and what appeared to be Browning slugs. He also found .30-06 ammunition.

¶ 10    On the same day, Detective Hails conducted a follow-up interview with Kristy at approximately 9 a.m. Kristy confirmed that she, Kyle Tucker, Jonathan Garrison, the defendant, and Kaylee Marshall, the defendant's girlfriend, lived at the home. Kristy reported that she was not aware that the defendant had guns and drugs in his bedroom. Kristy further stated that she limited who came to the home and that the defendant would leave to spend time with his friends, although she did not know who those friends were. Kristy confirmed that the only guns she had in the home were those she had previously disclosed.

¶ 11    Detective Hails conducted a custodial interrogation of the defendant on the same day. The defendant reported that he obtained the Glock from a person named Kobe, later identified as Kobe Rosko, approximately two to three weeks earlier. The defendant stated that Kobe had just given him the pistol and that he figured there was something wrong with the situation, but he did not question it. Later, the defendant reported that he was involved in trading a brown 12-gauge shotgun for the Glock. The defendant acknowledged that the Glock was probably stolen because the serial number was defaced when he received it. The defendant said he used the Glock to shoot at the range and take pictures. The defendant stated that the Toyota key fob discovered in his room was left in his vehicle by Mackee Roberts. The defendant also stated that he had struggled with methamphetamine use after being given methamphetamine instead of cocaine.

¶ 12    On January 7, 2026, Detective Hails executed an arrest warrant on Rosko, and Detective Sergeant Jackson took Rosko into custody. During a search of Rosko's residence, multiple firearms, including a brown 12-gauge pump shotgun that had been reported stolen, and controlled substances were found. Rosko was interviewed by Detective Hails and Detective Jackson and stated that he traded a Glock 19 Gen 5 and 50 Adderall pills to the defendant in exchange for the stolen 12-gauge pump shotgun approximately two to three weeks before January 7, 2026. Rosko stated that the Glock was in working condition when he traded it to the defendant and did not have scratched serial numbers or modifications. Rosko also stated that he traded the defendant Adderall pills for the .380-caliber firearm. Rosko stated that the defendant told him via Facebook Messenger that he had scratched the serial number off the .380-caliber firearm and that he and his girlfriend were going to report the firearm stolen. Rosko further stated that he sold Adderall to the defendant on multiple occasions, typically in quantities of 50 pills or less, and that the defendant had previously asked him to obtain methamphetamine, which he refused to do. Detective Hails would testify that he examined Rosko's iPhone with Rosko's consent and located Facebook Messenger communications between Rosko and the defendant discussing drug transactions.

¶ 13    The defendant's counsel proffered that the defendant was a 20-year-old lifelong resident of Jefferson County with significant family ties in the community. At the time of his arrest, the defendant was residing in Jefferson County with his mother, girlfriend, and minor brother. The defendant attended school through his junior year of high school and had been employed at a restaurant in the past year. He was not on probation at the time of his arrest. He was not on bond or pretrial release. He was on court supervision for a misdemeanor possession of drug paraphernalia case. He had never been on parole or work release and had never been sentenced to the Department of Corrections. He reported that he had no record of failing to appear for court

proceedings. A pretrial investigation report was unavailable, but the defendant's criminal history was limited, with court supervision for paraphernalia being the only known offense. The defendant's counsel further argued that no one was injured in this matter and that the defendant posed no danger to any person or the community. The defense requested immediate release of the defendant with electronic monitoring and home confinement in his mother's home.

¶ 14    The State argued that the defendant was charged with a qualifying offense, a Class X felony carrying a mandatory minimum 15-year prison sentence. According to the State, officers executing a lawful search warrant recovered a defaced Glock handgun with a laser attachment, a loaded magazine, ammunition, methamphetamine, a scale, rifles, and property connected to ongoing burglary investigations. The State further asserted that the defendant admitted possessing the Glock, admitted it was stolen, and admitted that he had a drug problem. The State noted that the proffer established that the defendant exchanged firearms for controlled substances. The State argued that this evidence showed the defendant posed a real and present threat to the safety of the community and to his younger brother residing in the home because it demonstrated his easy access to firearms, access to controlled substances, access to criminal associates, and integration into local burglary networks. The State further argued that no condition or combination of conditions could mitigate that threat because release to his mother's home was inappropriate, as the alleged offenses occurred while he was already living there, without his mother's knowledge. Additionally, the defendant posed a danger to his younger brother by bringing drugs and guns into the home.

¶ 15    After hearing from the parties, the trial court granted the State's petition to deny pretrial release. The court found by clear and convincing evidence that the defendant had committed a qualifying offense and posed a real and present threat to the safety of the community. In reaching that conclusion, the court relied on the specific facts that the defendant possessed a defaced Glock

6

handgun and ammunition, had a methamphetamine addiction, was involved in trading drugs for stolen property, and had stolen property in his possession. The court further found that no condition or combination of conditions could mitigate the threat, specifically concluding that release to the defendant's mother's home was not appropriate because the defendant had already been residing there when the alleged conduct occurred, and a minor was present in the home. Accordingly, the court ordered the defendant detained. On the same day, a detention order was filed. The court's written order found the dangerousness standard met and further found that less restrictive conditions would not assure the safety of any person or persons or the community because the "defendant had admitted drug issue and exchanging firearms for drugs and knowingly possessed defaced handgun, all while under the supervision of his mother, and he was already under court supervision at the time." The court also noted that the defendant possessed a stolen firearm and other stolen property. The court concluded that no combination of conditions could reasonably assure the safety of the community.

¶ 16                                    B. Motion for Relief

¶ 17    On January 9, 2026, the defendant filed a "motion for relief and immediate pretrial release under the pretrial fairness act." Defendant's motion for relief stated, in part, as follows:

> "6. Following said hearing, the Court made the following findings by clear and convincing evidence:
>
> a.The proof is evident or the presumption great that Defendant has committed a qualifying offense;
>
> b. Defendant poses a real and present threat to the safety of any person or person or the community, based on the specific articulable facts of the case;

7

c. No condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons;

7. The Court erred in granting the State's Petition to Deny Pre-Trial Release at said hearing, in that the State failed to meet its burden of proving by clear and convincing evidence any of the above in that:

a. The Court failed to fully consider Defendant's significant family ties to the community.

b. The Court failed to fully consider Defendant's willingness to abide by any terms of pre-trial release.

c. The Court failed to fully consider Defendant's employment opportunities.

d. The Court failed to fully consider Defendant's limited criminal history.

e. No weapon was used in the commission of the alleged offense.

f. No persons were injured during said allegations."

¶ 18    On January 16, 2026, the trial court held a hearing on the defendant's motion for relief. The defendant presented the same information and argument as he presented at the hearing on the State's motion to deny pretrial release. This included that the defendant was a lifelong resident with family ties to the community, was not on probation, parole, or work release at the time of his arrest, and had no criminal convictions, as he was only on supervision for possession of drug paraphernalia. Defense counsel argued that there were no injuries to any person or any violence alleged in the alleged charges. The State argued that a qualifying offense had been committed and conceded that the defendant did not have any prior felonies and had community ties. The State also presented much of the same information as it presented at the hearing on the State's motion to deny pretrial release. The State noted that the defendant was on court supervision for possessing

8

drug paraphernalia at the time of his arrest and argued that firearms and drugs are dangerous to the community. Further, while the State did not allege that the defendant participated in a residential burglary, items reported stolen were found in the defendant's possession, showing he at least benefited from the burglary.

¶ 19     After considering the arguments, the trial court denied the motion for relief and entered an order for continued detention. The trial court stated that "[i]t is clear [the defendant] committed a qualifying offense." Further, the defendant "poses a real and present threat to the safety of the people in the community. We're talking about trading drugs for firearms. You have possession of a defaced handgun. You have other stolen property in your possession and there's a residential burglary that took place in your neighborhood." Lastly, the trial court stated that no conditions, or combination of conditions, would mitigate the threat to the community. The defendant timely appealed on January 16, 2026.

¶ 20                                        II. ANALYSIS

¶ 21     On appeal, the defendant argues that the State failed to prove by clear and convincing evidence that the defendant posed a real and present threat to the safety of any person or persons or the community and that no condition or combination of conditions could mitigate any risk posed by his release. The defendant does not argue that the State failed to prove he committed a detainable offense. See 725 ILCS 5/110-6.1(a) (West 2024).

¶ 22     Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial Fairness Act (Act). Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024).

¶ 23     If the State files a petition requesting denial of pretrial release:

"[T]he State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of another person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7; 725 ILCS 5/110-6.1(e), (f) (West 2024).

The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2).

¶ 24    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the trial court and conducts its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. In the present matter, the parties proceeded solely by proffer, so we will employ *de novo* review.

¶ 25                              A. Dangerousness

¶ 26    The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense and the trial court concludes the defendant "poses a real and present threat to the safety of any person" or the community. 725 ILCS 5/110-6.1(a) (West 2024). The Code provides a non-exclusive list of "[f]actors to be considered in making a determination of

10

dangerousness" that the trial court may consider in assessing whether the defendant poses such a threat. *Id.* § 110-6.1(g). These include the following:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or

11

other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

¶ 27 On appeal, the defendant argues that the State failed to prove that he posed a real and present safety threat because the State and court relied exclusively on the nature of the charges to support a finding of dangerousness. The defendant contends that illegal drugs and guns are not sufficient for a finding of dangerousness. In support of this contention, the defendant relies on several cases from the Second District that, ultimately, do not support this position.

¶ 28 The defendant cites to *People v. Drew*, 2024 IL App (2d) 230606-U, ¶ 19, a case that involved charges of illegal drug (cocaine) sales, but no weapons or firearms. Likewise, *People v. Nicholson*, 2024 IL App (2d) 240257-U, ¶ 17, involved charges stemming from trafficking methamphetamine, but again, no weapons or firearms were involved in that case. In *People v. Barajas*, 2025 IL App (2d) 250130-U, the defendant was charged with manufacturing or delivering cocaine, fentanyl, and firearms, but firearms were not involved. These cases all involved drugs and the societal harm of drugs. Lastly, the defendant cites to *People v. Milam*, 2024 IL App (2d) 240027, a case involving child pornography, which is not relevant to the present matter.

¶ 29 This court, in *People v. Martin*, 2025 IL App (5th) 250688-U, has previously considered the argument made by the defendant that the societal harm of drugs does not equate to dangerousness. As we noted in *Martin*,

"the facts in *Barajas* also revealed that the State 'did not allege or present any evidence that defendant had used or possessed any weapons (725 ILCS 5/110-6.1(g)(7)

12

(West 2024)), engaged in threats or violence (*id.* § 110-6.1(g)(2)), had a criminal record or troubled history (*id.* § 110-6.1(g)(2)(A)), or targeted vulnerable individuals (*id.* §§ 110-6.1(g)(3), (6)).' " *Id.* ¶ 22 quoting *Barajas*, 2025 IL App (2d) 250130-U, ¶ 23.

"In other words, the court in *Barajas* stated, or at least strongly implied, that if the State had alleged or presented evidence that the defendant, *e.g.*, had 'used or possessed any weapons,' it would have succeeded in proving the dangerousness of the defendant's pretrial release." *Id.* ¶ 22. The cases cited by defendant in his memorandum dealt only with drugs, and not the combination of drugs and weapons. As such, these cases are distinguishable from the defendant's case.

Turning to the dangerousness factors in the present case, we have conducted our own independent review of the proffered evidence and the relevant factors. First, the nature and circumstances of the offenses charged against the defendant involve the trading of illegal firearms for controlled substances. 725 ILCS 5/110-6.1(g)(1) (West 2024). Next, the defendant was in possession of firearms and additional firearms were present in his mother's home. *Id.* § 110-6.1(g)(7). Further, at the time of the current offenses, the defendant was completing a sentence of court supervision in Jefferson County case No. 2024CM226 for possession of drug paraphernalia. *Id.* § 110-6.1(g)(8). Additionally, the defendant admitted to possessing the defaced Glock which he believed to be stolen. *Id.* § 110-6.1(g)(4). Finally, the defendant's possession of illegal drugs and weapons in his bedroom in a home shared with his 16-year old brother posed a danger to the minor. *Id.* § 110-6.1(g)(3). Accordingly, this court agrees with the trial court, that based on the specific articulable facts and the Code's factors, the State proved that the defendant posed a real and present safety threat to support a finding of dangerousness and poses a threat to his minor brother and the community.

¶ 30                                    B. Conditions

¶ 31    Once a determination is made that a defendant poses a threat to the safety of any individual or the community, the trial court must then determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id*. § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the defendant's character, physical and mental condition, family ties, employment, financial resources, community ties, past relating to drug or alcohol abuse, conduct, criminal history, and whether the defendant was on probation, parole, on release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id*. The statute lists no singular factor as dispositive. See *id*.

¶ 32    As we are employing *de novo* review, we will apply these same factors to the evidence proffered. We find the following factors support the conclusion that no condition or combination of conditions could mitigate the danger posed by the defendant: (1) the nature and circumstances of the offenses charged against the defendant involve the trading of illegal firearms for controlled substances, (*id*. § 110-5(a)(1)); (2) the defendant admitted to possessing stolen weapons, so the weight of the evidence against the defendant is strong, *id.* § 110-5(1)(2); (3) the defendant reported a substance abuse problem and he was completing a sentence for possession of drug paraphernalia at the time of the present offenses, *id.* § 110-5(1)(3); and (4) the seriousness of possessing multiple

14

illegal firearms and drugs in a home with a minor, *id.* § 110-5(1)(2). Accordingly, based on our independent review, we agree with the trial court that no condition or combination of conditions would mitigate the threat posed by the defendant.

¶ 33                                    III. CONCLUSION

¶ 34    Based on the foregoing reasons, we affirm the trial court's orders of January 9, 2026, and January 16, 2026.


¶ 35    Affirmed.